BERGEN COUNTY COURT OF COMMON PLEAS.

CATHERINE BOLLINGER, ADMINISTRATRIX OF THE ESTATE OF JOHN M. BOLLINGER, PETITIONER-APPELLEE, v. WAGARAW BUILDING SUPPLY CO., RESPONDENT-APPELLANT.

———

CATHERINE BOLLINGER, ON BEHALF OF HERSELF AND THE NEXT OF KIN OF JOHN M. BOLLINGER, DECEASED, PETITIONER-APPELLEE, v. WAGARAW BUILDING SUPPLY CO., RESPONDENT-APPELLANT.

Decided November 2, 1939.

For the petitioner-appellee, *Nathan Rabinowitz.*

For the respondent-appellant, *Kalisch & Kalisch* (by *Isidor Kalisch*).

1

DEL MAR, C. P. J. The above entitled cases come before this court on appeal from two judgments of the Workmen's Compensation Bureau, in favor of the petitioners-appellee, hereinafter called the petitioner or petitioners, and against the respondent-appellant, hereinafter called the appellant.

The proceeding first above entitled, was commenced by John Bollinger in his lifetime and carried on by his administratrix after his decease. The Court of Errors and Appeals of this state having decided, see report in 122 *N. J. L.* 512; 6 *Atl. Rep.* (*2d*) 396, that the administratrix was entitled to compensation, the case was duly remitted to the Workmen's Compensation Bureau to fix the amount of the same. The second above entitled matter comes before this court on appeal for the first time. The cases were argued together. The point at issue being identical, both cases will be disposed of, in so far as this court is concerned, in accordance with the terms of this opinion.

The transcript of the record shows that John M. Bollinger was employed by the appellant as an operator of a machine for the manufacturing of cement blocks; also as a watchman and caretaker of the plant where he was so employed; that he was paid $22 per week as a sand block worker, and for his services as caretaker and watchman was paid an additional $4 per week. There was provided for him by the appellant for the use of himself and his family a five-room house on the premises, free of charge. The appellant also provided water, electricity and fuel for use in the house, at its expense.

The bureau estimated the value of the premises with the free services thus provided, at $9.23 per week. The decedent suffered temporary disability from August 23d, 1936, to January 19th, 1937, a period of twenty-one and two-sevenths weeks. During this period the petitioner or his family were paid $10 per week and were allowed the use of the aforesaid premises with the service therefor furnished by the appellant.

The referee found that the appellant was entitled to credits of $19.23 per week against temporary disability payments and allowed for the administratrix compensation at the rate of seventy-seven cents per week. The referee also found

fifteen per cent. total disability and made allowances therefor, in accordance with the statute. The referee also made allowance for medical services, expert witnesses, attorneys' fees and other items, with all of which no fault is found by the appellant.

In both cases, however, the referee computed the wages of John M. Bollinger on the basis of $35.23 per week, being the total of three items: (1) $22 per week wages for work done in manufacturing cement blocks, (2) $4 per week extra wages for caretaking and watching, (3) $9.23 per week, being the value of the house and services furnished by the appellant, who contend that, inasmuch as the accident resulted from his employment at the cement block machine and because the two employments commenced at different times, and under separate arrangements, compensation should be figured on the basis of $22 per week, with which the petitioner takes issue, and that is the only point that was argued in this court.

Counsel for neither side have cited for my consideration any case in this state, bearing directly upon the question here involved; neither have my own researches led me to discover any. The case seems to be one of first impression.

An examination of the law in other jurisdictions can be of little, if any, help, the statutory provisions in such jurisdictions being so various and so different from our own. The general scheme of our Workmen's Compensation act was to provide for injured employes. Under article 1, such compensation is only paid in case the negligence of the employer was the natural and proximate cause of the injury sustained. Certain common law defenses were abolished. Under article 2, compensation was paid regardless of negligence, in accordance with the schedules provided in said article. The various paragraphs and sections referring to compensation in that article all refer to the wages of the employe, which are defined in *R. S.* 34:15-37, to mean, "The money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident."

I find nothing in the act to aid this court in determining the precise meaning of the term, "service rendered." Neither

do I find any elucidation of the term, "under the contract of hiring in force at the time of the accident." In construing the act, its provisions should be considered in the light of the entire statute. *Sexton* v. *Newark District Telegraph Co.,* 84 *N. J. L.* 85 (at *p.* 91). The act is remedial and should be liberally construed. *Combination Rubber Manufacturing Co.* v. *Obser,* 95 *Id.* 43; *affirmed,* 96 *Id.* 544; 115 *Atl. Rep.* 138.

The law recognized the right of the employer and employe to contract that the employment shall be either under article 1, or under article 2. In a suit under article 1, in case of the injury or death of an employe, the entire wages received by the employe would be an element of damage. No reason is apparent to me why this rule should not prevail under article 2. The whole scheme of elective compensation would break down if an employer should be permitted to classify the work of his employes under separate divisions and make a separate contract for each.

There is no evidence in this case that the petitioner would have been employed as a watchman, and as such, been permitted to have lived on the premises in the house furnished by his employer, except for his other employment by appellant during the daytime. The record further shows that some of the work for which he was paid at the rate of $4 per week and lodging, was performed during the hours when he was customarily employed at his work in making cement blocks. Both employments, in my opinion, are so connected and interrelated as to be but one within the contemplation of the act. The mere fact that Bollinger's hiring as a watchman and caretaker commenced at a time subsequent to his other employment does not change the situation. The contract of employment as a watchman and caretaker was a modification of, or supplement to the original hiring. On the day of the accident, Bollinger was rendering service to his employer in both capacities, and the contract of hiring, using this term in a broad sense, covered all of the work being performed by Bollinger.

These views lead to the affirmance of the judgment of the Workmen's Compensation Bureau in both cases.