UNION COUNTY COURT OF COMMON PLEAS.

DOROTHY ANN LUKAWICH, PETITIONER-APPELLEE, v. PHELPS DODGE COPPER PRODUCTS CORPORATION, RESPONDENT-APPELLANT.

Decided May 15, 1940.

For the petitioner-appellee, *David Roskein.*

For the respondent-appellant, *George E. Meredith.*

McGRATH, C. P. J.  Decedent was employed for a long time by respondent as a caster or moulder.  In July or August, 1938, he was taken by respondent to keep the furnaces going during Saturdays and Sundays so that the casting could be resumed on Mondays without delay.  This week-end work was in addition to his work as a caster and, incidentally, this week-end work is described as that of a watchman but this term is misleading since his actual duty was to watch the fires and keep them going.  In March, 1939, while cleaning out a furnace he received burns which caused his death.  The award is appealed by respondent on the ground that the compensation should have been based on a wage of $42.40 per week as a "watchman" based on a five-day week. There is, however, no proof to justify such a finding.  The

evidence is that he received a weekly wage of $51.04 and that although his pay for casting and his pay for watching were at different rates, his customary weekly wage as a fixed routine of long standing employment amounted to $51.04.

The week-end work was not occasional, nor overtime, but had continued for a long time regularly as part of the fixed and necessary routine of casting, and it was undoubtedly to the advantage of the employer rather than to employ a man for this work alone. He really had only one job with several duties, all of which were related and interdependent and all part of one continuous operation. The fact that he was not permitted to take a day off unless he got one of the other workmen to take his place, with the acquiescence of the employer and with deduction of pay only emphasizes the continuous character of his job as one general contract of hire, with added duties assigned during the course of employment. He was paid a weekly wage of $51.04 and there is nothing in the proof to suggest that his employer regarded him as anything but a regular worker employed at this weekly wage, although the rate of pay was different for the week-end work. He received only one check for both duties and apparently was carried on one payroll at this customary weekly rate.

The deceased did not meet his death as a "watchman" alone but as an employe, and there is no proof that he ever would have been given the job of "watchman" if he were not already employed in the department; the inference is that he was given the added duty because he was already employed in this general work.

The essence of the statutory scheme is to prescribe weekly payments of compensation at a fixed rate, i. e., a certain percentage of the weekly wage (*DiMeglio* v. *Slonk, &c.*, 121 *N. J. L.* 366; 5 *Atl. Rep.* (*2d*) 691) and this weekly wage is not always determined by the rate in force at the time of the accident, but primarily by the contract of employment; otherwise, the employer by splitting up the work at different rates, or segregating the most dangerous part of an operation or job could defeat the purpose of the act, and the court should not adopt such a construction. All the circumstances must be considered. It would be an obvious disregard of the

statutory scheme to base the compensation on his week-end work alone and to ignore the rest of the contract, since one duty arose out of the other. In the DiMeglio case, the compensation was based on the weekly wage but it was impossible to tell what the weekly wage would be except by the calculation adopted by the Supreme Court. But in the present case there was a fixed weekly wage, which varied only if the employe took a day off, and in this respect the deceased was no different from any other employe who takes a day or so off from work and has his pay deducted accordingly. It is this "weekly" wage which is contemplated by the act on the basis of compensation.

In the present case also there is proof which was not present in the DiMeglio case nor in the other cases on this point: the respondent in the present case offered no proof but when ordered by the commissioner to answer a bill of particulars showing the weekly wage of decedent as shown by respondent's payroll, the respondent's answer showed that this weekly wage was $51.04, and that is the wage on which compensation was allowed.

Respondent urges that the added work was voluntary but there is no proof that it was; the proof is that he was assigned to it. His job was no more voluntary than that of any other workman. No workman is compelled to take a job but when he does he is protected by the act.

I find that decedent was employed to respondent under one general employment, part of which was to act as caster and part to act as watchman; that his duties required him to keep the furnaces going for the work of casting and that on March 27th, 1939, he met with an accident which arose out of and in the course of his employment, from which accident he died on April 3d, 1939, and of which injury respondent had notice. His wages as a caster were $40.00 per week consisting of five days, from Monday to Friday, inclusive, and his hours for his extra duty as already stated were an aggregate period of sixteen hours for Saturday and Sunday. He received eighty-five cents an hour for forty hours for casting and $1.06½ per hour for sixteen hours for his additional work. He worked regularly seven days per week for eight

hours per day with about ten Saturdays off. His weekly wages for his general service for employment were $51.04, excepting deductions when he took off. His customary number of working days constituting the ordinary week of employment was seven days and compensation should be based on such seven-day week.