46 N.J. Super. 599 (1957)
135 A.2d 52
JAMES CSER, PETITIONER-APPELLEE,
v.
MAX SILVERMAN T/A MAXWELL WINE CO., RESPONDENT-APPELLANT. JAMES CSER, PETITIONER-APPELLEE,
v.
KESSLER REALTY COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Middlesex County Court, Law Division.
Decided October 4, 1957.
*600 Messrs. Wilentz, Goldman, Spitzer & Sills (Mr. Elias A. Kanter, appearing), attorneys for petitioner-appellee.
Mr. Edward E. Kuebler, attorney for respondent-appellant Max Silverman.
Mr. Isidor Kalisch, attorney for respondent-appellant Kessler Realty Company.
KALTEISSEN, J.C.C.
This is an appeal from a determination of facts, award, and rule for judgment entered in the New Jersey Department of Labor and Industry, Workmen's Compensation Division, wherein the petitioner had filed two petitions, one against Max Silverman t/a Maxwell Wine Company, and one against the Kessler Realty Company.
This cause, to some extent, presents a question which does not seem to have been squarely determined by any previous decision in New Jersey. That question must be resolved, not in the light of some abstract supposition, but on the facts of this case whereof this court is duty bound to make its independent findings. Donofrio v. Haag Bros., Inc., 10 N.J. Super. 258 (App. Div. 1950). Accordingly, this court will initially state its findings of fact.
Cser sustained his compensable injury in an accident which befell him on March 18, 1955 while doing some maintenance work in a building owned by Kessler Realty Co. (hereinafter to be referred to as Kessler or as the corporate respondent) in Perth Amboy, his injuries resulting in 5% of total and permanent disability; neither of the respondents questions the facts thus far stated and this court finds those facts amply sustained by the evidence. However, it was the petitioner's contention both before the Division of Workmen's Compensation and before this court that, at the time of the occurrence of the accident, he was in the joint employment and service of both respondents at a wage of $65 per week. The Division of Workmen's Compensation so found, and this court agrees with that finding  specifically, that Cser was in the employ of both defendants at the time *601 of the occurrence of the accident, although the injury was received in the premises owned by only one of the employers. The two claim petitions were consolidated for trial before the Division of Workmen's Compensation and one award was there made on the basis of 5% of total and permanent disability, and certain medical and other expenses assessed against both respondents. The corporate respondent, Kessler, does not question the propriety of that award in any respect, but has suggested to this court that, if this court should agree with Silverman's argument here made to the effect that Silverman should be wholly exonerated from any liability to the workman, then Kessler's liability to the workman should be reduced. This aspect of the case will be hereinafter more fully discussed.
As already indicated, it is this court's factual determination that, at the time of the occurrence of the accident Cser was in the joint employment of both respondents, at a salary of $65 per week. From the evidence it appears that this wage was paid to Cser by both Silverman and Kessler, that is, by both the individual and the corporation, with the former contributing $40 per week and the latter $25 per week. The person actually directing and controlling Cser, in behalf of Kessler Realty, was Silverman; the person actually directing and controlling Cser, in behalf of Silverman, was Silverman himself. It was Silverman alone who directed Cser when to go and what to do in Perth Amboy where the corporation's building required some maintenance work; it was Silverman alone who directed Cser when to go and what to do in New Brunswick where Silverman's bottling establishment was located. Plainly, the "corporation" was a Silverman family convenience. The respective contributions of $40 and $25 per week bore absolutely no relationship to the service rendered for one or for the other during each recurrent week of employment. The wage contributions to Cser were nothing more than matters of bookkeeping or tax advantage to the two persons who paid the wages. The inescapable fact is that Cser was on duty call to both the corporation and to the individual at all times *602 during the week, as Silverman might from time to time direct. This court cannot ignore the fact, as Silverman from his argument (but not from his evidence) would have this court ignore, that there is absolutely no evidence in this case to the effect that (1) Cser made a contract with Silverman to work for him for $40 per week, and (2) Cser made a contract with Kessler to work for it for $25 per week. From the evidence this court finds that Cser's contract of employment with both respondents was to work for them for $65 per week at such times and places and for such specific tasks as Silverman might from time to time direct.
The wholly artificial position advanced by Kessler is contrary to the social purposes which inspired, and which are the very lifeblood, of our Workmen's Compensation Act. The word "employer" is not defined by N.J.S.A. 34:15-36. So, in a comparatively recent case two partners who had engaged the wife of one of them as an employee, sought to avoid the consequences of the statute on the plea that husband and wife could not contract with each other, with the consequence that the partners would not be liable for injuries sustained by the employee wife during the course of her employment. That specious plea was demolished. Felice v. Felice, 34 N.J. Super. 388 (App. Div. 1955). This court believes that a liberal construction of the statute here under consideration, with reference to the meaning of the word "employer," is the only one that will accord with the principles of construction applicable to this statute. Biglioli v. Durotest Corp., 44 N.J. Super. 93 (App. Div. 1957).
The principle of law last referred to is further emphasized by the facts of this case. Under R.S. 34:15-12, the employee sustaining an injury such as that involved in the case at bar is limited to two-thirds of his wages. If Silverman's argument here made were accepted by the court, then this injured workman would receive nothing from Silverman because of the wholly fortuitous circumstance that the accident did not happen in Silverman's place of business, with the further consequence that Cser would receive only two-thirds *603 of $25 (the amount of Kessler's weekly contribution to Cser's wages) instead of receiving compensation based upon two-thirds of the actual wages, but with such two-thirds not to exceed $30 per week. In applying the policy of a liberal construction of the Workmen's Compensation Act, the courts may "resolve doubts in the employee's favor." Biglioli v. Durotest Corp., supra; McBride v. Royal Laundry Service, Inc., 44 N.J. Super. 114 (App. Div. 1957).
While this court has, at the outset of this opinion, said that there seems to be no New Jersey decision "squarely" determining the legal question presented by this action, reason and authority are not entirely absent.
Many decades ago, and within a few years after our workmen's compensation statute was first enacted, the late Judge Harry V. Osborne, sitting in the Essex County Court of Common Pleas, had before him the case of a night watchman who had been so employed by four respondents, two corporations and two individuals. The watchman was found dead but under such circumstances as to make it impossible to determine whether or not there had been an accident arising out of the employment. However, Judge Osborne observed:
"The general employment of the deceased by all of the respondents was of the character usual in such circumstances, and I can well conceive that such an employment, by a number of employers, whether jointly or severally, for the purpose of watching their respective premises, might well be construed as being a general and continuous employment by all under which they would be liable for an accident to the employee arising out of and in the course of the employment." Curran v. Newark Gear Cutting Machine Co., 37 N.J.L.J. 21 (C.P. 1913).
Of particular force and of great persuasiveness is the case of Scott v. Public Service Interstate Transportation Co., 6 N.J. Super. 226 (1950). The administratrix ad pros. of her deceased husband brought suit against the Interstate Transportation Company, claiming that her husband had been injured through the negligence of that defendant. That company  and Public Service Coordinated *604 Transport  maintained and controlled a garage where the plaintiff's deceased husband was injured. All the employees there were under the supervision of Mr. Bolton, superintendent of the garage, who was employed by both companies and which contributed equally to his salary. The deceased filled out report cards at the end of each day, designating the type of work done and the number of hours worked for Coordinated or Interstate and at the end of the week he received a pay check for the entire weekly earnings. This pay check was designated as "Public Service Payroll Check," although the earnings were actually allocated on the books of the companies between Interstate and Coordinated in accordance with his vouchers. The Appellate Division, with opinion by then Judge (now Justice) Jacobs was that the plaintiff could not maintain her common law suit, and the reasoning of the court is well deserving of quotation:
"Numerous decisions have been rendered throughout the country with respect to the effect of dual employment under Workmen's Compensation Acts * * * although we have not been referred to anything controlling within our State. * * *
We consider that the decedent's work at the Montgomery Street garage was at all times under the direction of Interstate as well as Coordinated. The superintendent, who acted for Interstate and Co-ordinated, indiscriminately directed his work to be done as required. His main work, that of cleaning the garage, necessarily benefited both companies and the fact that, for bookkeeping purposes, it may have been charged to one company or the other did not alter the employer-employee relationship or the control by both companies. Under acknowledged principles of law this ever present joint control would appear sufficient to establish the master and servant relationship between the decedent and both companies. Cf. Collawn v. 25 North Harrison Street Corporation, 11 N.J. Misc. 44, 47 (Sup. Ct. 1933); Toner v. International, etc., Atlantic City, 113 N.J.L. 29, 30 (E. & A. 1934).
Our conclusion that since the decedent was in their joint employ he was entitled to proceed in the Bureau against both companies is consistent with the underlying purposes of the Workmen's Compensation Act. That Act provides for payment of a percentage of `wages' which is defined to mean the money rate at which the service rendered is recompensed under the contract of hiring. The decedent considered his wages to be his single weekly check paid jointly by his employers. He never knew, nor was he concerned with, the bookkeeping allocation. When injured he was entitled to anticipate compensation on the basis of his aggregate weekly earnings regardless of whether he *605 happened to be working on a Coordinated or Interstate bus when the accident occurred. If the contention now urged by the appellant were accepted, the decedent's compensation might be held to depend on how much had been charged to Coordinated on its books (Cf. Quebec's Case, 247 Mass. 80, 141 N.E. 582 (Sup. Jud. Ct. 1923); in such event, he would receive far less compensation than the Act contemplated and if there had been several joint employers contributing equally to his salary his compensation would invariably be wholly incommensurate with his real weekly wages. Cf. Bollinger v. Wagaraw Building Supply Co., 18 N.J. Misc. 1 (C.P. 1939); Lukawich v. Phelps Dodge Copper Products Corp., 18 N.J. Misc. 351 (C.P. 1940)." 6 N.J. Super., at p. 229.
While Scott v. Public Service Interstate Transportation Co. was not a workman's compensation case, the question of the rights of a workman in the service of two employers was necessary for decision. The case at bar is a workman's compensation case. This court now accepts as the guiding principle for its decision that a workman who is in the service of two employers and who is injured while performing service for either of them, even though the injury occurs at the place of business of only one of the employers, is entitled to recover against both of his employers under the Workmen's Compensation Act of New Jersey, with his recovery admeasured by the total of the wages paid by the two employers. This principle, in the opinion of this court, is more consistent with the attainment of justice than that which would result by attempting the refinements exemplified by Quebec's Case, cited in Scott v. Public Service Interstate Transportation Co., supra, with evident disapproval by our Appellate Division. The desirability of the advancement of justice in accordance with the wisdom of added experience is well exemplified by Polulich v. J.G. Schmidt Tool Die & Stamping Co., 46 N.J. Super. 135 (Cty. Ct. 1957).
The weight of opinion in other jurisdictions will be found in accord with the views above expressed. See 1 Larson, Workmen's Compensation Law, sec. 48.40, pp. 719-721, and cases there cited and cited in 1956 Supplement.
The attorneys for the petitioner will, on notice to the respondents, present an appropriate judgment in accordance with the views above expressed.