JOHN T. STACK, PETITIONER-APPELLANT, v. BOONTON
BOARD OF EDUCATION, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 11, 1984—Decided February 20, 1985.

Before Judges FRITZ, GAULKIN and LONG.

*Balk, Balk and Mandell,* attorneys for appellant (*Jack Mandell,* on the brief).

*Braff, Litvak, Ertag, Wortmann, Harris & Sukoneck,* attorneys for respondent (*Leo Ertag,* on the brief).

*Zazzali, Zazzali & Kroll* filed a brief on behalf of amicus curiae New Jersey Education Association (*James R. Zazzali,* of counsel; *Robert A. Fagella,* on the brief).

The opinion of the court was delivered by

FRITZ, P.J.A.D.

In this workers' compensation matter the sole issue concerns the computation of wages for compensation purposes in a case in which the petitioner holds three jobs for the same employer. The judge of compensation concluded that the three jobs were independent of each other, selected one and based the compensation rate on the salary paid for that one on the theory that it was "during his employment" on that job that he was injured. We reverse.

On April 19, 1980, the day of the accident in question, John Stack was employed by the Boonton Board of Education (Board) in three capacities: a mathematics teacher, the head football coach and head golf coach. This employment came about a year prior to that date when Stack, then teaching and coaching at Ridgefield Memorial High School, responded to a newspaper advertisement placed by the Board. Stack sought the job because he had "recently moved into the Morris County area" and he was seeking employment "closer to home." The advertisement sought a head football coach. The testimony of Stack and that of the principal of Boonton High School differ respecting the availability of teaching positions at the time of the advertisement, but it is uncontested and uncontestable that there was a vacancy in the teaching ranks at the time of the hiring and that Stack was hired "as a teacher at Boonton High School and as head football coach." It is also factual, as demonstrated by the testimony of the principal, that in order to be considered for the coaching job "you had to have [teacher] certification." At the time of the accident, Stack's several duties with the Board were covered by three contracts, each describing the amount of money allocated for the three jobs.

On the day of the accident, Stack commenced his employment at 6:30 in the morning at a universal gym weight lifting program at the school open to all students. He was in charge of this program. The participation was not just by athletes but also by "kids in that also who were not involved in sports but just wanted to be in a weight lifting program." According to his uncontradicted testimony, he then supervised his homeroom and taught his classes in mathematics, meeting just before lunch with a few of his football players who were having some scholastic difficulties. After his teaching assignments were through, he met with a college football coach respecting whether he "had any football players that ... met all his academic and football standards." Following the school day he devoted a half hour to "extra help for the math kids" and then he

changed into his golf clothes and went to the Knoll Golf Club where he coached an interscholastic golf match, driving there in his automobile and taking two of the players with him. He returned to the school, changed into a suit, picked up the principal and the two of them went together to the Morris County Football Coaches' Association Banquet. Stack testified that while at the banquet in addition to conversation concerning football, he and the principal talked about both the mathematics classes and the golf team. The principal denied any recollection of the subjects discussed. The two sat together at the dinner.

Stack and the principal went home separately. On the way home Stack was involved in an automobile accident which left him a totally and permanently disabled paraplegic.

As noted above, the sole issue is whether the wages for the employment should be aggregated for determination of the compensation rate, or whether that rate should be determined only on the salary paid for coaching football, as the judge of compensation determined. The Board argues that the jobs are separate and distinct. Petitioner insists that they are a single employment, but even if they are not, they represent joint and concurrent employment.

We can conceive of no reason why the simple expedient of three separate contracts, allocating the salary which the Board was paying Stack for the work he did for them into proportionate amounts, should cause employment by the same employer of the same person to be considered three separate employments. This is especially so where the qualification for one of the jobs was conditioned upon qualification for another: Stack needed teacher certification before he would be considered for the football coaching position.

Beyond this, the nature of the various tasks confounds line drawing. When Stack supervised the weight lifting activity in the morning, was he employed as a football coach, a golf coach or a mathematics teacher? Did his efforts to assist football players having scholastic troubles with their schoolwork convert Stack from a football coach to a scholastic counselor or a

math teacher if one of the difficulties the student was having was with mathematics? If Stack were to be believed—the judge of compensation made no finding in this respect—when he testified that at the dinner the night of the accident, he talked with the principal about "my math program—how it was coming along," does it not follow that the events were to be identified in part at least with the classroom teaching job?

The judge of compensation was disposed to his determination by his conclusions, "While petitioner worked for a single employer, he obviously operated under three contracts of employment. *His duties under each were separate and distinct from the others. Accordingly, petitioner held three separate jobs with the Boonton Board of Education and each was independent of the other.*" (Emphasis supplied.) The questions we have suggested above convince us that the italicized conclusions cannot spring from any findings reasonably reached on sufficient credible evidence in the whole record. The fact is inescapable that while Stack's employment was divided into three different jobs—and apparently a few more without portfolio—there was an ineluctable intermingling and overlapping.

While there are numerous dual employment and joint and concurrent employment cases, there is a paucity of case law in New Jersey dealing with employment by one employer of one employee in several jobs which are undertaken essentially concurrently. Two old cases are informative.

In *Bollinger v. Wagaraw Building Supply Co.*, 18 *N.J.Misc.* 1, 11 *A.*2d 367 (C.P.1939) the employee was employed as a machine operator and as a watchman. In addition to separately apportioned pay for those two jobs, he was provided with a house and utilities. A judgment was entered in the (then) Workmen's Compensation Bureau aggregating these salaries and including an allowance to represent the house and utilities. The judge of Common Pleas on his review agreed, concluding:

> ... Both employments ... are so connected and interrelated as to be but one within the contemplation of the act. The mere fact that Bollinger's hiring as a

watchman and caretaker commenced at a time subsequent to his other employ-ment does not change the situation. The contract of employment as a watch-man and caretaker was a modification of, or supplement to the original hiring. On the day of the accident, Bollinger was rendering service to his employer in both capacities, and the contract of hiring, using this term in a broad sense, covered all of the work being performed by Bollinger. [18 *N.J.Misc.* at 4, 11 *A.2d* at 368–369.]

A similar result was achieved in *Lukawich v. Phelps Dodge Copper Products Corp.*, 18 *N.J.Misc.* 351, 13 *A.*2d 568 (C.P.1940) by a different Common Pleas judge. Here petitioner was em-ployed as a caster. His employer also paid him to keep the furnaces going over the weekend so that the casting could begin on Monday without delay. Here the judge held that "decedent was employed ... under one general employment, part of which was to act as caster and part to act as watchman." 18 *N.J.Misc.* at 353, 13 *A.*2d at 569. The wages were aggregated and the em-ployment was held to be for a seven-day week.

In like fashion we are satisfied that petitioner here was employed in one general employment part of which was as a mathematics teacher, part as a football coach and part as a golf coach.

In a remarkably similar case, New York has come to the same conclusion. There a physical education teacher who re-ceived "an additional stipend" for coaching the track and foot-ball team, was held to have earned an aggregated salary in the employment. The court, eschewing a finding of dual and dissimilar employments, said:

> ... Clearly, this was not the case. The record indicates that all of the claimant's work activities and duties were totally integrated and had as their foundation one skill, that of teaching. Furthermore, even if there were dual employments rather than a single employment, they would be similar in nature and character and the average weekly wage would have to be determined by combining the weekly wages of the "dual" or "concurrent" employments [citation omitted]. [*Orbinati v. Utica Mutual Ins. Co.*, 64 *A.D.*2d 725, 725, 406 *N.Y.S.*2d 604, 605 (App.Div.1978).]

The result we reach is consistent with the apparent policy of the Department of Education. That policy considers scholastics and athletics as integrated parts of the school curriculum as is obvious from *N.J.A.C.* 6:29–6.3(a). This directs that "[n]o per-son not certified as a teacher and not in the employ of a board

of education shall be permitted to organize public school pupils during school time or during any recess in the school day for purposes of ... coaching or for conducting games, events or contests in physical education or athletics."

The result is also consistent with our time-honored policy of construing "the workmen's compensation act so as to comport with its presumptive beneficent and remedial objectives favorable to injured workmen rather than to be bound by its coldly literal import." *Paul v. Baltimore Upholstering Co.*, 66 *N.J.* 111, 136 (1974).

Since, concordantly with the authorities we have cited, we come to the conclusion that petitioner's employment was a matter of one employment for one employer, we need not consider the various ramifications of our law relating to joint and concurrent employment.

We reverse and remand to the Division of Workers' Compensation for entry of a judgment in favor of petitioner based on an aggregation of his wages in the employment of the Boonton Board of Education.