173 N.J. Super. 1 (1980)
412 A.2d 1346
MIMI KASTEN, PLAINTIFF-APPELLANT,
v.
Y.M.C.A. ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 26, 1980.
Decided March 19, 1980.
*2 Before Judges BOTTER, MILMED and KING.
Keith, Winters & Levine, attorneys for appellant (Stewart L. Levine on the brief).
*3 Richard A. Amdur, attorney for respondent (John D. Brady on the brief).
The opinion of the court was delivered by KING, J.A.D.
Plaintiff brought this action for personal injuries allegedly suffered on December 26, 1976 at the Arrowhead Ski Resort located in Marlboro, Monmouth County, which was allegedly operated by defendant "Y.M.C.A. of Shrewsbury." She claimed her injuries from a downhill fall were caused by "defendant's negligence in renting [her] skiing equipment, including skis, boots, poles and bindings, which were in a state of disrepair and not properly fitted." Plaintiff claimed that she was a business invitee on defendant's premises.
Defendant moved for summary judgment, claiming charitable immunity pursuant to L. 1959, c. 90, § 1; N.J.S.A. 2A:53A-7, which states:
No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association; but nothing herein contained shall be deemed to exempt the said agent or servant individually from their liability for any such negligence. [Emphasis supplied][1]
This act largely restored the common law immunity which eleemosynary institutions enjoyed prior to our Supreme Court's decisions in Collopy v. Newark Eye & Ear Infirmary, 27 N.J. 29 *4 (1958), and Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958). See discussion in Lawlor v. Cloverleaf Memorial Park, Inc., 56 N.J. 326, 336-338 (1970).
In support of the motion defendant relied on the affidavit of W. Van Lenten, the "Branch Executive of the Community YMCA, Camp Arrowhead, Bayshore Branch, incorrectly named in the complaint as YMCA of Shrewsbury." He admitted that the subject "Arrowhead Family Center & Ski Area is owned by and is part of Community YMCA which serves Upper Monmouth County." Van Lenten's affidavit describes the integration of the profit-making ski operation in the overall Y.M.C.A. operation as follows:
........
3. Community YMCA operates on an annual non-profit basis. This ski budget, combined with our summer, spring and fall activities, represents an annual break-even budget.
4. The ski operation is part of the overall YMCA Corporation, which is a non-profit corporation under Title 15, under the New Jersey Statutes.
5. Money received from the ski operation does not begin to cover the entire cost of operating the extensive YMCA facilities, but is used to help defray the direct expenses related to the ski operation such as salaries for lift attendants, cashiers, snow making, rental clerks and administrative employees. In addition, the ski program helps to defray the overhead costs of the Arrowhead Outdoor Center, which includes salaries of professional, clerical and custodial staff members.
6. This YMCA ski operation is certainly part of the overall charitable scheme of the YMCA whose objectives include serving youth and families, promoting physical fitness, operating within a balanced budget, eliminating sexism and racism and developing a lay organization that perpetuates a strong YMCA. Skiing is a vital and important program that adds to our capability of accomplishing these objectives.
From this description we infer that the ski operation turns a net profit which is used to underwrite the other Y.M.C.A. community programs which produce a net monetary loss annually.
Plaintiff paid defendant a rental fee for skis and boots and, according to defendant's answer to interrogatory 19, an "adult *5 tow fee non-YMCA member $7." In her affidavit in opposition to the motion, plaintiff stated that she "strongly contests this asserted immunity as I treated this ski resort as any other private facility and paid fees both for rental of equipment and for use of the facilities. Furthermore, I am not a member of the YMCA nor have I ever been." Plaintiff also incorporated in her affidavit an advertisement for the facility which appeared on January 5, 1979, a month before the motion was heard, in the Asbury Park Press. The advertisement entreated the public to "COME SKI WITH US, Save Time  Energy  Money, Ski Close to Home at the YMCA Arrowhead Ski Area, Rt. 520, Marlboro" at Monmouth County's "only ski area." No advertisement contemporaneous with the 1976 accident was presented to the court.
The Law Division judge ruled for defendant Y.M.C.A. on the immunity issue, stating that
... [T]he Y.M.C.A. is a nonprofit organization with a particular purpose in mind and that among its particular purposes is to advance the general health of the people who engage in activities supported by the Y.M.C.A., that whatever profit they make at Arrowhead, if in fact they do make a profit, again is put into general activities of the Y.M.C.A. for the purposes for which it was organized ...
and that plaintiff was a "recipient of the benefactions" of defendant.
The issue on this appeal is whether plaintiff, a nonmember of defendant Y.M.C.A., who rents equipment and pays a nonmember's tow fee, is barred by N.J.S.A. 2A:53A-7 where she patronizes defendant's profit-making ski operation only and receives no other benefits from the Y.M.C.A. Plaintiff does not dispute that the Y.M.C.A. is generally a "nonprofit corporation . . organized exclusively for ... charitable, [and] educational ... purposes," within N.J.S.A. 2A:53A-7. See Lawlor v. Cloverleaf Memorial Park, 56 N.J. 332, 336-338 (1970); Pomeroy v. Little League Baseball of Collingswood, 142 N.J. Super. *6 471, 474 (App.Div. 1976); Hauser v. Y.M.C.A., 91 N.J. Super. 172, 175-176 (Law Div. 1966); Stoolman v. Camden Cty. Council Boy Scouts, 77 N.J. Super. 129, 133, 136 (Law Div. 1962).
Therefore, the sole question before us is whether, in the words of the statute, plaintiff was "a beneficiary, to whatever degree, of the works" of the Y.M.C.A., or rather was "one unconcerned in and unrelated to and outside of the benefactions of" the Y.M.C.A. From our cases it appears that the inquiry is a two-fold one, involving consideration of each of the parties separately. As was stated in Sommers v. Union Beach First Aid Squad, 139 N.J. Super. 425 (App.Div. 1976):
Since enactment of the statute our courts have looked to the nature of the activity being undertaken by the allegedly immune defendant when the cause of action arises. The controlling test in that regard has been stated to be "whether the institution pleading the immunity, at the time in question was engaged in the performance of the charitable objectives it was organized to advance," and whether plaintiff then was truly a beneficiary thereof. Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532, 536 (App.Div. 1962). See Book v. Aguth Achim Anchai of Freehold, N.J., 101 N.J. Super. 559 (App.Div. 1968); Peacock v. Burlington Cty. Historical Soc., 95 N.J. Super. 205 (App.Div. 1967); Wiklund v. Presbyterian Church of Clifton, 90 N.J. Super. 335 (Cty.Ct. 1966). See also, the statutory precursors at common law, Bianchi v. South Park Presb. Church, 123 N.J.L. 325 (E. & A. 1939); Boeckel v. Orange Memorial Hosp., 108 N.J.L. 453, 456 (Sup.Ct. 1932). [139 N.J. Super. at 431.
Accord, Pomeroy v. Little League Baseball of Collingswood, supra, 142 N.J. Super. at 475.
Plaintiff contends that the ski operation here is essentially no different than the "bingo" cases, where the general public is invited to pay and play and the profit goes into the general coffers of the church or synagogue, which are not immunized from tort liability by the statute. See Book v. Aguth Achim Anchai of Freehold, N.J., 101 N.J. Super. 559 (App.Div. 1968); Jewell v. St. Peter's Parish, 10 N.J. Super. 229 (Cty.Ct. 1950). *7 Defendant contends that plaintiff's enjoyment of the ski facility, even though she paid therefor, makes her a beneficiary to some degree of the charitable and educational works of the Y.M.C.A. rather than a person "unconcerned in and unrelated to and outside of the benefactions" of defendant. N.J.S.A. 2A:53A-7. See Anasiewicz v. Sacred Heart Church, 74 N.J.Super 532 (App. Div.), certif. den. 38 N.J. 305 (1962) (nonparishioner guest at church wedding ceremony barred); Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325 (E. & A. 1939) (girl scout injured at meeting in church barred although not church member). Defendant also contends that § 4 of the act, L. 1959, c. 90, restoring the charitable immunity which eleemosynary institutions enjoyed at common law, which states:
This act shall be deemed to be remedial and shall be liberally construed so as to afford immunity to the said corporations, societies and associations from liability as provided herein in furtherance of the public policy for the protection of nonprofit corporations, societies and associations organized for religious, charitable, educational or hospital purposes. [N.J.S.A. 2A:53A-10]
compels a construction in its favor and an affirmance.
We conclude that N.J.S.A. 2A:53A-7 was not intended to immunize eleemosynary organizations from claims by fee-paying nonmembers arising from commercial activities geared to generate profit for the organization's charitable purposes. Here the record is productive of the inference that plaintiff, a non-Y.M.C.A. member, was a paying customer, at a higher charge than members, of a ski operation which was commercially promoted and which produced an overall profit. Plaintiff made an economic contribution to the organization. See Sommers v. Union Beach First Aid Squad, supra, 139 N.J. Super. at 432. At best, the ski operation was a mixed commercial and charitable operation; commercial for nonmembers and charitable for members.
*8 Our Supreme Court's construction of N.J.S.A. 2A:53A-7 in Mayer v. Fairlawn Jewish Center, 38 N.J. 549, 553-554 (1962), is instructive in pointing out that the plaintiff's individual relationship with the defendant charity is controlling. In Mayer plaintiff was the regional director of the Development Corporation of Israel, a New York corporation engaged in sale of bonds issued by the State of Israel for that country's economic development. Plaintiff was injured while attending a dinner meeting held for the promotion of bond sales at defendant Center. Plaintiff's employer had arranged for the use of the Center free of charge, except $6 for food service, for this promotional purpose. The Supreme Court rejected defendant Center's claim that a benefit to plaintiff's employer was a benefit to the plaintiff. In concluding that the plaintiff was unconcerned in, unrelated to and outside of the benefactions of the Center under N.J.S.A. 2A:53A-7 the Supreme Court said:
We desire to emphasize further plaintiff's capacity as an employee of Development Corporation of Israel. Assuming, arguendo, his employer was a recipient of Center's benefactions, Mayer's status on the premises cannot be measured by that of his employer. His rights so far as the statutory immunity is concerned depended upon his own individual relation with the Center. True, he was on the premises under the aegis of his employer, and by virtue of the employer's arrangement became an implied invitee of the Center. But he was there in fulfillment of his function and obligation as an employee to engage in the employer's work at the direction of the employer, and not for the purpose of receiving personally the philanthropy of the Center. Under the circumstances present he was a stranger to the charity and the statute does not stand in the way of recovery. [38 N.J. at 553-554; emphasis supplied]
Plaintiff's mere presence on the defendant's property or use of defendant's facilities does not necessarily invoke the immunity. Nor is plaintiff automatically barred because a member-user would be barred by N.J.S.A. 2A:53A-7. Plaintiff's particular relationship to the defendant charity controls.
*9 The result we reach here is consistent with the general common-law rule that when an otherwise charitable or educational organization engages in commercial activities bearing no substantial and direct relationship to its general purpose, the organization loses the immunity it would customarily enjoy even though the derived profits are used for charitable purposes. See Kirby v. Columbian Institute, 101 N.J. Super. 205, 210-211 (Law Div. 1968); 15 Am.Jur.2d, Charities, § 211 at 255. One authority has stated the common-law rule as follows:
If, however, the corporate activities are primarily commercial in character, carried on to obtain revenue to be used for charitable purposes, a charitable corporation is subject to the ordinary rules of liability. In other words, the test of immunity is not the use to which the income is put but the nature of the source from which the income is derived, including income-producing or rental real estate of a charitable corporation not used directly in its charitable activities. [10 Fletcher, Cyclopedia of Private Corporations, § 4937 at 604 (1978)]
See, also, Annotation, "Charity  Tort Liability  Immunity," 25 A.L.R.2d 29, 130 (1952 and Supp.), and Annotation, "Tort Immunity, Private Schools," 38 A.L.R.3d 480, 517 (1971).
An interesting example of the loss of tort immunity through commercial activity is the case of Kaltrider v. Young Men's Christian Ass'n of Cleveland, Ohio, 457 F.2d 768 (6 Cir.1972) (Ohio law), where the plaintiff was injured as a result of a fall in a parking lot owned and operated by defendant. The facts were:
The defendant owned a building in which it carried on the usual activities of a Y.M.C.A., including rooms which it rented. Adjacent to the building the defendant owned other property. On part of this property was a building which was leased to the Harshaw Chemical Company. The balance of the adjacent property was reserved for parking, 25 spaces were allocated to the Harshaw Chemical Company which paid a total rent of $18,000 per year, and the other parking spaces were available to patrons of the Y.M.C.A., who were required to pay for the privilege of parking. It is undenied that the defendant profited *10 from the rental of its parking facilities, as well as from the rental of the building to the Harshaw Chemical Company. It also appears that all proceeds were used for payments on the mortgage covering the property on which the Harshaw Chemical Company building and the parking lots were situated, for the payment of taxes on these properties, and that any balance was used in connection with the defendant's usual activities. [Id. at 770]
The Court of Appeals for the Sixth Circuit held that under Ohio law the Y.M.C.A. lost its immunity from liability for negligence arising out of the operation of a commercial facility, even though the net proceeds ultimately were devoted to charitable purposes.[2] Other examples include Grueninger v. President & Fellows of Harvard College, 343 Mass. 338, 178 N.E.2d 917 (Sup.Jud.Ct. 1961), holding that immunity was lost where the school, in exchange for a fee, agreed to provide medical care pursuant to a profit-making insurance plan, owned and operated by defendant and to which plaintiff subscribed, although the profit was used for the school's educational purpose, and Gamble v. Vanderbilt University, 138 Tenn. 616, 200 S.W. 510 (Sup.Ct. 1917), holding that a university was not immune for injury to a paying tenant of an office building it owned and operated as an investment to produce profits for its educational purposes, although a part of the building was used to accommodate the university's law school.
In the present case the commercial operation of the ski area where higher fees for nonmembers of the Y.M.C.A. were charged is distinguishable from Hauser v. Y.M.C.A., 91 N.J. Super. 172 (Law Div. 1966). In that case plaintiff was a member of the Y.M.C.A. and a paying resident of its facility. As a resident and member plaintiff was entitled to the privileges of general membership and to use the defendant's various recreational facilities. Plaintiff in Hauser was properly held to *11 be precluded by N.J.S.A. 2A:53A-7 from recovering damages for injuries received in an accident in defendant's swimming pool while in residence at defendant's facility.
On the record before us defendant was not entitled to summary judgment as a matter of law. R. 4:46-2. We therefore reverse and remand for further proceedings. If the proofs disclosed that plaintiff was, as alleged, a non-Y.M.C.A. member and a patron of defendant's commercially promoted ski area operated for profit used for defendant's general charitable purposes, and that she paid a higher tow or lift fee than defendant's user-members, she is not barred by N.J.S.A. 2A:53A-7.
Reversed.
NOTES
[1] The statute was originally enacted in 1958, for one year, L. 1958, c. 131, and later re-enacted permanently in 1959, L. 1959, c. 90.
[2] Unfortunately, the opinion does not describe plaintiff's relationship, if any, to the Y.M.C.A.