# CIRCUIT COURT OF THE CITY OF RICHMOND

Edwin R. Gaines

v.

Young Men's Christian Association

February 7, 1994

Case No. LW-1913–4

BY JUDGE RANDALL G. JOHNSON

This case is before the court on defendant Young Men's Christian Association of Greater Richmond's (YMCA) plea of charitable immunity. Plaintiff, a member of the YMCA and a participant in a basketball league conducted by it, was injured during a league game at the YMCA's Manchester Branch in Richmond. Plaintiff claims that his injury was caused by the YMCA's negligence in allowing a liquid substance to leak through the ceiling and onto the gymnasium floor, causing him to slip and fall. The YMCA contends that plaintiff's claim must be dismissed under the doctrine of charitable immunity. Plaintiff, of course, disagrees.

The doctrine of charitable immunity is alive and well in Virginia. *See, e.g., Thrasher v. Winand,* 239 Va. 338, 340, 389 S.E.2d 699 (1990) ("It is a well-settled rule in Virginia that charitable institutions are immune from liability based upon claims of negligence by those who accept their charitable benefits."). The parties have stipulated that the YMCA is a charitable institution. The dispositive question, then, is whether plaintiff, at the time of his injury, was a recipient of the YMCA's "charitable benefits."

The basketball league to which plaintiff belonged, and in which he was participating at the time of his fall, is made up of six to eight teams. Each team is required to pay an entrance fee of $500, plaintiff's team's fee having been paid by plaintiff's employer. Team members do not have to be members of the YMCA, although, as previously noted, plaintiff is a YMCA member. While the YMCA's revenues from the

league generally exceed its direct expenses in conducting the league, any extra money generated by the league is used to finance other YMCA programs or to pay indirect costs, such as plant maintenance, utilities, and so on. No part of such revenues is considered a "profit" since, as also previously noted, the YMCA is a charitable institution.

The YMCA's articles of incorporation state, in pertinent part, as follows:

> The purpose of the corporation is to provide for youth, adults and families of the Greater Richmond Area services and activities which develop and enrich their lives and help them achieve their fullest potential spiritually, mentally, physically, and socially.

In a document entitled "YMCA Philosophy," to which the parties have also stipulated, the following is said:

> YMCAs offer to men, women, boys and girls who participate in YMCA programs opportunities for growth and experiences that will help them: develop self-confidence, self-respect, and worth as individuals, achieve their highest potential, maintain physical and mental well-being, recognize the worth of all persons, develop capacities for leadership, [and] develop a sense of world-mindedness.

It is the YMCA's position that plaintiff's participation in a YMCA-sponsored basketball league fits squarely within the statements set out above, particularly, but not exclusively, as they relate to physical well-being. Thus, *according to defendant, plaintiff was a beneficiary of the* YMCA's charitable benefits at the time of his injury, and is precluded from suit. The court agrees.

It cannot be seriously disputed that basketball is an excellent means of maintaining physical fitness. Moreover, basketball very clearly helps people "develop and enrich their lives and . . . achieve their fullest potential [at least] mentally [and] physically," and, one can vigorously argue, spiritually and socially, as well. Basketball develops people's self-confidence, self-respect, and worth as individuals; helps achieve their highest potential; maintains physical and mental well-being; and develops capacities for leadership. Since all of these things are a part of the YMCA's "charitable benefits," and since plaintiff was a recipient of those benefits when he was injured, the doctrine of charitable immunity bars his recovery.

Plaintiff cites the case of *Straley v. Urbanna Chamber of Commerce*, 243 Va. 32, 413 S.E.2d 47 (1992), for the proposition that a person must receive a "pecuniary" benefit from a charity in order to be precluded from suit. Indeed, the following passage is contained in *Straley*:

> Furthermore, the evidence was undisputed that the plaintiff received no pecuniary benefits from the funds generated by the festival or contributed by the Chamber to any of its charities.

243 Va. at 37.

Stating that *Black's Law Dictionary* defines "pecuniary" as something which can be valued by money, and that the benefits offered by the YMCA cannot be so valued, plaintiff asserts that charitable immunity does not apply. Plaintiff misreads *Straley*.

*Straley* involved a plaintiff who was injured during the annual Oyster Festival held in the Town of Urbanna. She sued the Urbanna Chamber of Commerce, the Urbanna Oyster Festival Committee, and the chairman of the Festival parade. The defendants filed a plea of charitable immunity, which was sustained by the trial court. The Supreme Court of Virginia reversed. First, the Court discussed the purpose for which the Chamber of Commerce, which sponsored the Oyster Festival, was formed. That purpose was to "promot[e] the Town of Urbanna, Virginia, and provid[e] a means by which to stimulate economic growth in the area." 243 Va. at 33–34. Next, the Court looked at the activities of the Festival and the way in which revenues were distributed. The Court next discussed the doctrine of charitable immunity, particularly the case of *Thrasher v. Winand, supra*. In that discussion, the Court noted that it had held in *Thrasher* that the subject charity's beneficiaries "were only those to whom its board of directors donated the proceeds of its fund-raising activities, a category to which [the plaintiff] did not belong." 243 Va. at 37 (*quoting* 239 Va. at 342).

Finally, the court concluded that the plaintiff Straley was not a beneficiary of the Chamber of Commerce's purpose in conducting the Oyster Festival, since she was not a resident of Urbanna or the surrounding area, and since the purpose of the Festival was, in the words of the Chamber's bylaws, to "advanc[e] the commercial and civic interests of the Town of Urbanna and the surrounding area." It was only then that the Court added the language concerning pecuniary benefit upon which the present plaintiff relies ("Furthermore, the evidence was

undisputed that the plaintiff received no pecuniary benefit . . . ."). When read in context, it is clear that the lack of a pecuniary benefit was merely *one* of the factors relied on by the Court to hold that charitable immunity did not apply. The opinion cannot be read as holding that the presence or absence of a pecuniary benefit is the only factor to be considered in determining whether charitable immunity exists.

Nor is plaintiff helped by the Court's holding in *Thrasher*, cited in *Straley*, that charitable immunity did not apply because plaintiff Thrasher was not a beneficiary of the subject charity, such beneficiaries being "only those to whom [the charity's] board of directors donated the proceeds of its fund-raising activities . . . ." 239 Va. at 342. Contrary to plaintiff's arguments, this holding is not a general statement that in order to be a beneficiary of a charity a person must receive monetary proceeds or, by implication, something of pecuniary value. Rather, it is a holding related peculiarly to that case. Specifically, the charity at issue in *Thrasher* had been formed to "organize and promote an annual 'Spring Festival' in Buchanan, to engage in other community activities, *and to donate its net earnings to local charities*." 239 Va. at 339 (emphasis added). The charity's articles of incorporation further stated as its purpose: "[t]o operate a non-stock, non-profit organization to create a greater awareness and visibility of the community of Buchanan, Virginia, and to organize, promote, finance and supervise an annual Spring Festival . . . to be known as Mountain Magic in May." *Id.* at 341.

In holding that charitable immunity did not apply, the Supreme Court first held that the social club to which plaintiff belonged, and which had contracted with the charity to be a food vendor at the Spring Festival, was not a beneficiary of the charity. 239 Va. at 341. Next, with regard to plaintiff, himself, the Court said that the general purpose of the charity, to "create a greater awareness" etc., "confers indirect benefits which are too remote to give rise to the defense of charitable immunity." *Id.* at 342. The Court then dealt with the only remaining purpose of the charity: "to donate its net earnings to local charities." And since no proceeds were donated to the plaintiff, he was not a beneficiary of that charitable benefit. That holding does not apply here.

In the case at bar, the YMCA's charitable benefits are not limited to donations to other charities; nor are they of such an indirect nature as to be too remote to give rise to the defense of charitable immunity.

Rather, those benefits, set out *supra*, are clear, precise, and direct. While they may not confer any pecuniary benefit on any beneficiary, they are every bit as charitable as the benefits discussed in *Thrasher* and *Straley*. Moreover, they are benefits which were directly conferred upon plaintiff.

Finally, plaintiff cites the New Jersey case of *Kasten v. Y.M.C.A.*, 173 N.J. Sup. 1, 412 A.2d 1346 (1980), for the proposition that the doctrine of charitable immunity does not bar actions in tort by fee-paying patrons of YMCA-sponsored events. The court declines to apply the holding of *Kasten* here. First, the court notes that the *Kasten* court characterized the activity involved, the renting of ski equipment at the Arrowhead Ski Resort, as a "commercial" activity, at least as it concerned the plaintiff. 412 A.2d at 1350. This was true, according to the court, because the ski operation was "commercially promoted," and nonmembers of the YMCA, which plaintiff was, were charged higher rates than members. *Id.* Thus, it was entirely logical for the court to conclude that charitable immunity "was not intended to immunize eleemosynary organizations from claims by fee-paying nonmembers arising from commercial activities geared to generate profit for the organization's charitable purposes." *Id.* By contrast, I find that the operation of a basketball league by the YMCA here is not a commercial enterprise, but is an integral part of the YMCA's charitable mission. Furthermore, the present plaintiff *was* a member of the YMCA at the time of his injury, although that membership does not make any difference as long as a charitable benefit is bestowed.

Second, our Supreme Court has specifically noted, and rejected, what it perceived to be a trend in other states to limit or eliminate charitable immunity:

> We are not unmindful that the trend of decisions in other jurisdictions has been to eliminate, or at least to limit, the principle of immunity. We resist that trend now, just as we did in 1959, in [*Memorial Hospital v. Oakes, Adm'x*, 200 Va. 878, 108 S.E.2d 388 (1959)].

*Hill v. Memorial Hospital, Inc.*, 204 Va. 501, 506, 132 S.E.2d 411 (1963).

It is interesting to note that subsequent to *Hill*, which involved a tort claim against a charitable hospital, the General Assembly enacted legislation which drastically altered the doctrine of charitable immunity

as it applies to hospitals. *See* Va. Code § 8.01–38. No similar legislation has been enacted with regard to other charitable entities.

Because Virginia still recognizes the doctrine of charitable immunity, because the YMCA is a charitable institution, because the operation of a basketball league fits squarely within the charitable purposes for which the YMCA was organized, and because plaintiff's injury occurred at a time when he was a direct beneficiary of the charitable, though not pecuniary, benefits of the YMCA, plaintiff is precluded from recovery by the doctrine of charitable immunity. The YMCA's plea is sustained.