779 A.2d 449 (2001)
343 N.J. Super. 568
Janet LAX, Plaintiff-Appellant,
v.
PRINCETON UNIVERSITY, Trustees of Princeton University, Princeton Chamber Symphony, Inc., Robert Smart, John Hlafter, Tom Nyquuist, Mr. Consolloy, Gerald Witsel, and Ken Grayson, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 2001.
Decided August 10, 2001.
Mitchell J. Makowicz, Jr., Newark, argued the cause for appellant (Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte, attorneys; Mr. Makowicz, of counsel and on the brief).
Thomas D. Romando, Hamilton, argued the cause for respondents (Romando, Astorino, McLarty & DeMille, attorneys; Colleen M. Crocker, of counsel and on the brief).
Before Judges SKILLMAN and WECKER.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
Plaintiff appeals from a summary judgment which dismissed her personal injury *450 action against Princeton University (University), the Princeton Chamber Symphony (Chamber Symphony) and certain of their officials and employees on the ground that her claim is barred by the Charitable Immunity Act, N.J.S.A. 2A:53A-7 to -11.
The Chamber Symphony, a non-profit corporation, rents Richardson Auditorium in Alexander Hall, a small campus auditorium with high quality acoustics, from the University, also a non-profit corporation, to perform symphony concerts of classical music. The University's total charges to the Chamber Symphony for each concert are approximately $5,000. Those charges include the use of Richardson Auditorium not only for the performance but also rehearsals, providing security staff and ushers, setting up and taking down the orchestra stage, and recording the concert.
Plaintiff, a resident of a retirement community, purchased a subscription for a five concert series performed by the Chamber Symphony. While attending one of the concerts on October 20, 1996, plaintiff tripped and fell, suffering personal injuries. Plaintiff's complaint alleged that defendants were negligent in the maintenance and inspection of Richardson Auditorium and failed to provide a safe place for members of the public who attend concerts there.
N.J.S.A. 2A:53A-7a provides in pertinent part:
No nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association.
In addition, N.J.S.A. 2A:53A-9 provides in part:
For the purposes of this act but not in limitation thereof, the buildings and places actually used for colleges, schools, academies, ... [or] charitable ... purposes, the moral and mental improvement of men, women and children, ... [and] auditoriums, ... when so operated and maintained by any such nonprofit corporation, society or association, shall be deemed to be operated and maintained for a ... charitable [or] educational... purpose.
Thus, to be entitled to immunity under the Charitable Immunity Act, "a defendant must be a `nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes,' and the plaintiff must be `a beneficiary' of its `works.'" Morales v. New Jersey Acad. of Aquatic Sciences, 302 N.J.Super. 50, 53, 694 A.2d 600 (App.Div. 1997) (quoting N.J.S.A. 2A:53A-7).
The Chamber Symphony is organized
to provide both the musicians and the public with the opportunity to explore and enjoy the vast repertoire for chamber orchestra, with particular emphasis on the symphonies of Haydn and on *451 works of the twentieth century, to foster the development of an appreciation for the musical arts and to provide a focus for cultural education and interest in those arts by: promoting the study, improvement and advancement of such arts; sponsoring and encouraging professional as well as amateur chamber orchestra concerts so as to provide entertainment and the voluntary exploitation of the members' talents, all for no pecuniary gain; carrying on research; and taking part in any and all activities necessary, suitable and proper for the accomplishment of these purposes....
Consistent with these purposes, the Chamber Symphony hires professional musicians to perform symphonic concerts of classical music for members of the general public and also provides educational programs for local schools. Although the persons who attend concerts pay admission charges, those charges are insufficient to defray all of the Chamber Symphony's expenses. Consequently, the Chamber Symphony relies to a substantial extent upon legislative appropriations and charitable contributions to fund its concert series and educational programs.
Although the concerts performed by the Chamber Symphony may be viewed as a form of entertainment or recreation, these activities are clearly "educational" and "charitable" within the intent of the Charitable Immunity Act. Our Supreme Court has recently noted that "`a wide range of nonprofit organizations that provide educational opportunities or other services which promote the public welfare' are deemed to have charitable purposes." Bieker v. Community House of Moorestown, 169 N.J. 167, 177, 777 A.2d 37 (2001) (quoting Morales, supra, 302 N.J.Super. at 54, 694 A.2d 600). "Thus, charitable immunity has been extended to a Y.M.C.A., Hauser v. Young Men's Christian Ass'n of Rahway, 91 N.J.Super. 172, 219 A.2d 532 (Law Div.1966), the Boy Scouts, Stoolman v. Camden County Council Boy Scouts of Am., 77 N.J.Super. 129, 185 A.2d 436 (Law Div.1962), Little League baseball, Pomeroy v. Little League Baseball of Collingswood, [142 N.J.Super. 471, 362 A.2d 39 (App.Div.1976)], a non-profit organization which maintains a small public park, Heffelfinger v. Town of Morristown, 209 N.J.Super. 380, 507 A.2d 761 (Law Div. 1985), and an `historical society' which displays historical exhibits, Peacock v. Burlington County Historical Soc'y, 95 N.J.Super. 205, 230 A.2d 513 (App.Div.), certif. denied, 50 N.J. 290, 234 A.2d 399 (1967)." Morales, supra, 302 N.J.Super. at 54, 694 A.2d 600. In fact, the Court in Bieker held that a non-profit corporation that rents facilities to the general public for activities such as weddings, birthday parties, piano recitals, dance classes and sporting contests, serves "important social and recreational needs of the community[,]" and consequently may be found to be devoted to charitable purposes. 169 N.J. at 177, 777 A.2d 37.
It is clearer in this case than it was in Bieker that the Chamber Symphony's activities are educational and charitable in nature. A performance of classical music provides a cultural and educational experience for patrons of this form of artistic production. Moreover, the subsidization of the concerts and school programs through charitable contributions provides further support for the conclusion that the Chamber Symphony is organized and operated for charitable purposes. See Morales, supra, 302 N.J.Super. at 56, 694 A.2d 600 (noting that receipt of "substantial amount of charitable contributions ... is one of the essential characteristics of a non-profit *452 corporation entitled to charitable immunity.").
It is also clear that plaintiff was a direct "beneficiary" of this educational and charitable endeavor when she was injured while attending one of the Chamber Symphony's concerts. See Rupp v. Brookdale Baptist Church, 242 N.J.Super. 457, 463-66, 577 A.2d 188 (App.Div.1990); Anasiewicz v. Sacred Heart Church of New Brunswick, 74 N.J.Super. 532, 536-38, 181 A.2d 787 (App. Div.), certif. denied, 38 N.J. 305, 184 A.2d 419 (1962). The fact that she was required to pay an admission charge to obtain this benefit does not affect her status as a beneficiary. See Bieker, supra, 169 N.J. at 178-180, 777 A.2d 37; Loder v. St. Thomas Greek Orthodox Church, 295 N.J.Super. 297, 302-03, 685 A.2d 20 (App.Div.1996). Therefore, plaintiff's claim against the Chamber Symphony is barred by the Charitable Immunity Act.
Bieker also supports the conclusion that the Charitable Immunity Act bars plaintiff's claim against the University. In that case, the plaintiff was the three year old son of a member of an adult men's basketball group who suffered personal injuries when he fell from a fire escape adjoining the basketball court. Because the members of the men's basketball group were not employees or agents of a non-profit entity, the Charitable Immunity Act would not have immunized them from tort liability arising out of a basketball game or the supervision of a participant's child. See Crawn v. Campo, 136 N.J. 494, 499-508, 643 A.2d 600 (1994); Foldi v. Jeffries, 93 N.J. 533, 544-50, 461 A.2d 1145 (1983). Nevertheless, the Court held that unless it could be shown that the dominant use of the nonprofit organization's facilities was rentals by for-profit entities, it would be entitled to charitable immunity because the use of its facilities by members of the general public serves "important social and recreational needs of the community." 169 N.J. at 177, 777 A.2d 37.
In view of the Court's conclusion in Bieker that a non-profit entity's rentals to members of the general public for social and recreational activities may provide a basis for immunity under the Charitable Immunity Act, it follows a fortiori that the University, which is itself devoted to educational purposes, is entitled to immunity from a claim arising out of the rental of an auditorium to another non-profit entity that uses the facility for similar educational purposes. Theatrical productions, concerts, and other artistic performances are an integral part of the educational life of a university. Thus, if the University presented its own chamber music production of classical music at Richardson Auditorium, there would be no doubt such a production would be considered part of its educational program, and that if a person attending a performance were injured, the University would be entitled to immunity. We see no reason why the result should be different simply because the University rents its facilities to another non-profit corporation to present a program similar to what the University itself could present.
Affirmed.