846 A.2d 646 (2004)
368 N.J. Super. 403
Steven AUERBACH and Iris Auerbach, Plaintiffs-Respondents,
v.
JERSEY WAHOOS SWIM CLUB, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 2004.
Decided April 29, 2004.
*647 Michael A. Katz, Summit,argued the cause for appellant (Crawshaw, Mayfield, Turner, O'Mara, Donnelly & McBride, attorneys; Mr. Katz, on the brief).
Derek T. Braslow, Cherry Hill, argued the cause for respondents (Sherman, Silverstein, Kohn, Rose & Podolsky, attorneys; Mr. Braslow, on the brief).
Before Judges CONLEY, CARCHMAN and WEISSBARD.
The opinion of the court was delivered by
CARCHMAN, J.A.D.
Plaintiff Steven Auerbach suffered personal injuries when he fell in a stairway area leading to the men's locker room after swimming at the defendant Jersey Wahoos Swim Club (Wahoos or defendant). Wahoos is a not-for-profit corporation organized to train swimmers at various competitive levels. Plaintiff, a member of Wahoos, and his wife Iris filed *648 a complaint for damages[1] and defendant, in its answer, asserted immunity under the Charitable Immunity Act (the Act), N.J.S.A. 2A:53A-7 to -11. Following discovery, defendant moved for summary judgment. The motion judge denied the application, concluding that defendant was not organized exclusively for educational purposes and received little revenue from contributions, gifts, grants or donations. We granted leave to appeal and now reverse. We conclude that defendant is entitled to immunity and remand to the Law Division for entry of an order dismissing plaintiff's complaint.
These are the facts presented to the motion judge. Wahoos is incorporated in New Jersey under the New Jersey Nonprofit Corporation Act, N.J.S.A. 15A:1-1 to 16.2.[2] Wahoos' certificate of incorporation states, in relevant part:
SECOND: The purpose for which this corporation is formed is:
To provide, construct, develop, acquire, lease, own, operate, and maintain a club and facilities and equipment for the promotion of amateur swimming and diving and any and all kinds of water sports, for the benefit of the members and of their guests;
To promote, arrange and hold any and all kinds of amateur athletic contests, exhibitions and competitions, and to contribute towards and provide for the awarding of prizes and trophies therein;
To raise funds by membership subscription or otherwise for the encouragement of amateur athletic sports, and to grant commensurate rights and privileges to members and subscribers;
To acquire, own, buy, sell, lease, mortgage or otherwise manage and deal in and with real property suitable for the above stated purposes;
Notwithstanding any other provisions of these articles the corporation is organized exclusively for one or more of the following purposes: religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, as specified in section 501(c)(3) of the Internal Revenue Code and shall not carry on any activities not permitted to be carried on by a corporation exempt for Federal income tax under section 501(c)(3) of the Internal Revenue Code.[3]
Wahoos claims tax exemption under 26 U.S.C.A. 501(c)(4) of the Internal Revenue Code, which exempts "[c]ivic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare ... and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes." 26 U.S.C.A. 501(c)(4)(A). Although Wahoos identified (c)(4) as the section under which it was applying for recognition of exemption, it then completed Schedule D, for organizations claiming exemption under section (c)(7), which exempts "[c]lubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes." 26 U.S.C.A. 501(c)(7). However, *649 Wahoos has consistently identified section (c)(4) as its organization type for purposes of income tax exemption.
Since its inception, Wahoos "ha[s] attempted to provide a comprehensive program of training for all levels of competition." According to Wahoos' brochure, Wahoos was formed to "keep a competitive swimming program in the area." Wahoos' "primary exempt purpose" is to "promote and teach swimming."
Wahoos maintains two types of membershipgeneral and swim team. In 2000, Wahoos had 100 general members and 300 swim team family members. Wahoos is also "a member of United States Swimming... [and] Middle Atlantic Swimming which encompasses Delaware, Southern New Jersey and Eastern Pennsylvania," and is one of approximately 200 similar clubs that maintain competitive swimming programs including the Burlington YMCA, a team at Fort Dix and a team at the Gloucester County Institute of Technology.
The facility itself consists of a twenty-five yard indoor swimming pool, a second pool for lessons, a Universal weight room, office areas, a lobby and locker rooms. Although plaintiff suggested that the facility was similar to a near-by swim club or commercial gym,[4] at oral argument, defendant represented that the facility is as described and does not contain any of the facilities usually found in a swim club such as lounge chairs or other amenities.
On defendant's motion for summary judgment, the judge found that "under the facts of this case, at best, Jersey Wahoos is a non-profit organization organized partially... for educational purposes and partially as ... a limited gym where people can go and lift weights and swim and do whatever else is available there for them to do." The judge noted that Wahoos' total income[5] exceeded a million dollars in 1999, and that Wahoos is a 501(c)(4) corporation with member fees set, but "receives very, very little, if any, money from contributions, gifts, grants, donations." The judge found that the facts presented do not invoke "[t]he dominant theme of the [Charitable Immunity] Act," which the judge explained is "to protect funds that are contributed through the generosity of the contributors or donators of money, to protect those funds." The judge then denied defendant's summary judgment motion, finding that "the Act does not apply and that [plaintiff] is not a beneficiary of that charitable aspect of this organization."
Following the judge's denial, the Supreme Court decided Ryan v. Holy Trinity Evangelical Lutheran Church, 175 N.J. 333, 815 A.2d 419 (2003), in which the Court distinguished between entities with an educational or religious purpose, and those with a charitable purpose. Based on Ryan, defendant unsuccessfully moved for reconsideration. We then granted defendant's motion for leave to appeal.
We commence our analysis with a review of the statute. N.J.S.A. 2A:53A-7(a) of the Act provides, in relevant part:
No nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes *650 ... shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association.
[N.J.S.A. 2A:53A-7(a) ].
"Charitable immunity is an affirmative defense, as to which, like all affirmative defenses, defendants bear the burden of persuasion." Abdallah v. Occupational Ctr. of Hudson County, Inc., 351 N.J.Super. 280, 288, 798 A.2d 131 (App.Div.2002). "[A]n entity qualifies for charitable immunity when it `(1) was formed for non-profit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works.'" Bieker v. Community House of Moorestown, 169 N.J. 167, 175, 777 A.2d 37 (2001) (citing Hamel v. State, 321 N.J.Super. 67, 72, 728 A.2d 264 (App.Div. 1999)). Defendant is undisputedly a non-profit organization and contends that it also met the second and third prongs to qualify for charitable immunity.
Where no material issue of fact exists as to "whether defendant had been organized for exclusively educational purposes and whether plaintiff was a beneficiary of defendant's works," the questions become "purely a matter of law to be decided by the trial judge." Pomeroy v. Little League Baseball, 142 N.J.Super. 471, 473, 362 A.2d 39 (App.Div.1976). The judge's legal conclusions are not accorded any special deference. Manalapan Realty v. Manalapan Tp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Recently, the Supreme Court distinguished entities organized exclusively for an educational or religious purpose, described as "subject matter" specific, and those organized exclusively for a charitable purpose, described as "a generic catchall term." Ryan, supra, 175 N.J. at 343, 815 A.2d 419. The Court explained: "[e]ntities that can prove they are organized exclusively for educational or religious purposes automatically satisfy the second prong of the charitable immunity standard." Id. at 346, 815 A.2d 419. That is, "no further financial analysis is required to satisfy the second prong of the Act." Ibid.
Here, the judge focused on the lack of funding "from contributions, gifts, grants, [and] donations." Such consideration is irrelevant under Ryan. When defendant raised this argument, the judge posited:
So, anybodyany corporation can set itself up inin its certificate it says, we are organized exclusively for education. Then they go about and do whatever they feel like doing. But as long as they say that, and a member is hurt, the member can't sue because the member is a beneficiary of thatof that charitable purpose.
The judge's hypothetical assumes that a certificate of incorporation, by itself, will establish the purpose of an organization. To the contrary, the Ryan Court, in finding that the organization in question "fit[] the profile of an entity organized exclusively to provide educational opportunities," looked to the organization's declared purpose *651 in its bylaws and "its operation, which includes lectures, discussions, and the general exchange of information." Ryan, supra, 175 N.J. at 347, 815 A.2d 419. The focus on funding sources while perhaps relevant to charitable purposes is of less relevance to organizations such as Wahoos that are organized for educational purposes.
When determining whether Wahoos established that it was organized exclusively for educational purposes, we have recognized that non-profit organizations are granted "substantial latitude in determining the appropriate avenues for achieving their objectives." Bloom v. Seton Hall Univ., 307 N.J.Super. 487, 491, 704 A.2d 1334 (App.Div.), certif. denied, 153 N.J. 405, 709 A.2d 798 (1998). "[T]he term `educational ... [is] not limited to purely scholastic activities." Id. at 492, 704 A.2d 1334. While an entity claiming immunity cannot assert merely "that `life' is [the] educational experience," Kirby v. Columbian Institute, 101 N.J.Super. 205, 210, 243 A.2d 853 (Cty.Ct.1968), "educational" has been broadly defined to include birth and childrearing instruction to interested and prospective parents, Ryan, supra, 175 N.J. at 349, 815 A.2d 419; "the education of young people in the ideals of good sportsmanship, honesty, loyalty, courage and reverence ... through the teaching and supervision of baseball skills," Pomeroy, supra, 142 N.J.Super. at 474, 362 A.2d 39; an aquarium, Morales v. New Jersey Acad. of Aquatic Sciences, 302 N.J.Super. 50, 54, 694 A.2d 600 (App.Div. 1997); a chamber symphony, Lax v. Princeton Univ., 343 N.J.Super. 568, 571, 779 A.2d 449 (App.Div.2001); and a religious camp offering daily craft and game activities, Rupp v. Brookdale Baptist Church, 242 N.J.Super. 457, 465, 577 A.2d 188 (App.Div.1990).
Additionally, "a non-profit corporation may be organized for `exclusively educational purposes' even though it provides an educational experience which is `recreational' in nature." Morales, supra, 302 N.J.Super. at 54, 694 A.2d 600 (citing Pomeroy, supra, 142 N.J.Super. at 474, 362 A.2d 39). See also Stoolman v. Camden County Council Boy Scouts of Am., 77 N.J.Super. 129, 135, 185 A.2d 436 (Law Div.1962) (finding "educational" to be a generic term that could include and overlap with "recreational"). Such a liberal reading is consistent with the statute. See N.J.S.A. 2A:53A-10 (mandating that the "act ... be liberally construed").
That defendant's organization aims to teach its members swimming and aquatic skills does not preclude a finding that defendant's exclusive organizational purpose is educational. Wahoos' Team Handbook states: "It is the goal of Jersey Wahoos to continue to promote competitive swimming in South Jersey at all levels of competition." Wahoos' sole purpose since its inception is averred as providing "a competitive swimming program for as many young athletes as possible." In fact, plaintiff admitted that Wahoos' "net earnings are devoted to educational purposes."
Plaintiff unfairly identifies Wahoos as being simply a "swim club." In this respect, physical education and athletics, including school teams, are an identified part of a school's curriculum. E.g. Stack v. Boonton Bd. of Educ., 199 N.J.Super. 121, 126, 488 A.2d 1032 (App.Div.1985) (recognizing that the Department of Education "policy considers scholastics and athletics as integrated parts of the school curriculum"); National Org. for Women v. Little League Baseball, Inc., 127 N.J.Super. 522, 531, 318 A.2d 33 (App.Div.1974) (noting "the educational nature of competitive athletics" and citing Brenden v. Independent School Dist. 742, 477 F.2d 1292, 1298 (8th *652 Cir.1973)), aff'd, 67 N.J. 320, 338 A.2d 198 (1974); Thompson v. Board of Educ., 12 N.J.Super. 92, 96, 79 A.2d 100 (Cty.Ct. 1951) (finding that "[t]he organization of school athletic teams at public schools generally has been considered to be an integral part of physical education"). We have interpreted the term "educational" purpose broadly and do so here. Wahoos has not deviated from its stated purpose and does advance the teaching of swimming and aquatic skills. The judge incorrectly concluded that Wahoos was not organized exclusively for educational purposes.
Defendant argues that plaintiff was a beneficiary of Wahoos' work as his injury occurred while Wahoos was pursuing its educational purposes. Plaintiff counters that plaintiff, a general member of Wahoos, "was the beneficiary of defendant's `largess' but not of its works."
To be "a beneficiary of defendant's works," defendant need only show "that at the time plaintiff was injured defendant was engaged in the performance of the charitable objectives it was organized to advance." Pomeroy, supra, 142 N.J.Super. at 475, 362 A.2d 39 (citations omitted). Such a finding will be made where the particular activity "bear[s] a `substantial and direct relationship' to the [entity]'s `general purpose.'" Loder v. St. Thomas Greek Orthodox Church, 295 N.J.Super. 297, 303, 685 A.2d 20 (App.Div. 1996). See Rupp, supra, 242 N.J.Super. at 464-65, 577 A.2d 188 (finding that the camp constituted "an educational and charitable pursuit" of the church as the camp's daily "crafts and games ... foster[ed] sportsmanship, honesty and creativity"); Kasten v. Y.M.C.A., 173 N.J.Super. 1, 7, 412 A.2d 1346 (App.Div.1980) (finding the Act inapplicable to a non-member who pays a fee and engages in a "commercial activit[y] geared to generate profit for the organization's charitable purposes"); Kirby, supra, 101 N.J.Super. at 211, 243 A.2d 853 (finding the for-profit operation of a public bar and bowling alley to be "a commercial activity bearing no substantial and direct relation to the mental and moral improvement of men, women and children").
Here, plaintiff was injured after he left the pool and was descending the stairs to the men's locker room. At the time of plaintiff's injury, Wahoos was maintaining its swimming operation. While Wahoos may not have been actually teaching at the time of the incident, the water activity and swimming pool operation "generally contribute[d] to [its core] purposes and d[id] not change `the essence of the entity itself.'" See Bieker, supra, 169 N.J. at 171-72, 777 A.2d 37.
To be deemed a beneficiary, plaintiff need not have personally received a benefit, Loder, supra, 295 N.J.Super. at 303, 685 A.2d 20 (citing Anasiewicz v. Sacred Heart Church, 74 N.J.Super. 532, 536, 181 A.2d 787 (App.Div.), certif. denied, 38 N.J. 305, 184 A.2d 419 (1962)), or have intended or understood the entity's goals, Rupp, supra, 242 N.J.Super. at 465, 577 A.2d 188. That plaintiff paid for the services does not defeat his beneficiary status. Loder, supra, 295 N.J.Super. at 302-303, 685 A.2d 20; Lax, supra, 343 N.J.Super. at 572, 779 A.2d 449 (finding plaintiff's status as a beneficiary of the symphony unaffected because she had to pay an admission fee to receive the benefit); Graber v. Richard Stockton Coll., 313 N.J.Super. 476, 482, 713 A.2d 503 (App.Div.) (stating that immunity is not lost simply because the entity "charges money for its services, unless it makes a profit or collects fees for services totally unrelated to its organizational pursuits") (citation omitted), certif. denied, 156 N.J. 409, 719 A.2d 641 (1998); Hauser v. Y.M.C.A., 91 N.J.Super. 172, 176, 219 A.2d 532 (Law Div.1966) (finding *653 plaintiff, a resident and paying member of the Y.M.C.A, was a beneficiary of its good works). The controlling relationship is that between the plaintiff as an individual and the defendant entity. Kasten, supra, 173 N.J.Super. at 8, 412 A.2d 1346. See Loder, supra, 295 N.J.Super. at 302-303, 685 A.2d 20 (finding that a guest who paid to attend a Greek festival and dinner held by a Greek Orthodox Church was "a recipient of the church's benefactions).
For the purposes of the Act, plaintiff, a member of Wahoos who was utilizing the swimming pool at Wahoos at the time of his injury, was a beneficiary of Wahoos' works. Cf. Thomas v. Second Baptist Church, 337 N.J.Super. 173, 176, 766 A.2d 816 (App.Div.2001) (explaining that "a church's entitlement to immunity from a personal injury action brought by one of its members ... turns on the reason for the member's presence on the property"); Graber, supra, 313 N.J.Super. at 484, 713 A.2d 503 (finding that "a student engaging in educational pursuits is per se a beneficiary of a college or a university").
Finally, since we have concluded that Wahoos was entitled to immunity under the Act, we need not address the issue of whether plaintiff is collaterally estopped from asserting that Wahoos is not immune as a result of our earlier unreported opinion in Harms v. Jersey Wahoos Swim Club, Inc., No. A-6003-01T2 (App.Div. Aug. 1, 2003), where we reached the same decision that we have reached here. We do note that the "application of the collateral estoppel doctrine is discretionary and `must be applied equitably, not mechanically.' " Azurak v. Corporate Prop. Investors, 347 N.J.Super. 516, 523, 790 A.2d 956 (App.Div.2002) (citations omitted), aff'd, 175 N.J. 110, 814 A.2d 600 (2003). In any event, our determination that Wahoos is entitled to immunity renders the issue moot.
Reversed. We remand for the entry of an order dismissing plaintiff's complaint.
NOTES
[1] Plaintiff Iris Auerbach seeks damages for loss of consortium. All references to plaintiff are to Steven Auerbach.
[2] The New Jersey Nonprofit Corporation Act, L. 1983, c. 127, repealed the Corporations and Associations Not for Profit Act, N.J.S.A. 15:1-1 to 16-6, which was in force at the time of Wahoos' formation. The statute revision is irrelevant to this appeal.
[3] This paragraph was added when Wahoos amended its certificate on January 25, 1994.
[4] Throughout his brief, plaintiff utilized the parenthetical "Gym" in place of "Wahoos" or "defendant." While we generally consider the use of short-hand parenthetical references to be appropriate, when such phrase is used as a means of advocacy, as is the case here, we deem such use to be a distraction and inappropriate.
[5] The judge misspoke when he referred to "income." The proper reference was to "revenue." For example, in tax year 1999, the revenues exceeded one million dollars, but after deduction of expenses, the excess that was added to the asset fund of the corporation approximated $130,000.