852 A.2d 271 (2004)
371 N.J. Super. 189
Karin ROBERTS and John Roberts, Her Husband, Plaintiffs-Appellants,
v.
TIMBER BIRCH-BROADMOORE ATHLETIC ASSOCIATION, d/b/a T.B.A.A., Edward Smith, Paul Mayovich, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted June 2, 2004.
Decided July 15, 2004.
*273 Grimes & Grimes, Cherry Hill, attorneys for appellants (Patrick J. Grimes, of counsel and on the brief).
Naulty, Scaricamazza & McDevitt, Philadelphia, PA, attorneys for respondents (Gerard X. Smith, of counsel and on the brief).
Before Judges PRESSLER, CIANCIA and PARKER.
*272 The opinion of the court was delivered by PARKER, J.A.D.
In this appeal, we consider whether plaintiff, who was injured while attending a three-day soccer tournament sponsored by defendant, Timber Birch-Broadmoore Athletic Association (TBAA), is barred from suit by the charitable immunity statute.
It is undisputed that TBAA is a non-profit organization, "the objective[s], aim[s] and purpose[s] [of which] are: a. To aid and assist the youth of this community to become better citizens by making them aware of their responsibilities, b. To teach the meaning of good citizenship, fellowship and sportsmanship, c. To assemble teams and groups for participation in sports and other activities." TBAA hosted a three-day soccer tournament in August 2000 at which a number of vendors were present selling various items from hot dogs to T-shirts.
Plaintiff attended all three days of the tournament with her daughter and son, each of whom played on different teams, and her husband who coached their son's team. She claimed that she attended the tournament as a volunteer to "make sure the equipment gets where it needs to go.... [and make] sure all the first-aid equipment was there. If anyone needed anything at the field ... ice packs, bandages, whatever, I'd make sure they got it, make sure that game times were still the same, that nothing had been changed, make sure scores got posted properly...."
In her deposition, plaintiff testified that during the three-day tournament, she spent most of her time watching her daughter's and son's teams play. On August 26, the day of the accident, plaintiff left the playing field with her daughter to get something to eat at a vendor's stand. While she was walking with her daughter, she tripped and fell over a cooler located at one of the stands and injured her shoulder.
Plaintiff appeals the grant of summary judgment dismissing her complaint, arguing that the trial court erred in ruling that her claims were barred by the charitable immunity statute.
"Charitable immunity is an affirmative defense, as to which, like all affirmative defenses, defendants bear the burden of persuasion." Abdallah v. Occupational Ctr. Of Hudson County, Inc., 351 N.J.Super. 280, 288, 798 A.2d 131 (App. Div.2002). "[A]n entity qualifies for charitable immunity when it `(1) was formed for non-profit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works.'" Bieker v. Community House of Moorestoum, 169 N.J. 167, *274 175, 777 A.2d 37 (2001) (citing Hamel v. State, 321 N.J.Super. 67, 72, 728 A.2d 264 (App.Div.1999)).
[Auerbach v. Jersey Wahoos Swim Club, 368 N.J.Super. 403, 410, 846 A.2d 646 (App.Div.2004).]
There can be no dispute that TBAA is a non-profit organization. That does not automatically qualify it to invoke the defense of charitable immunity, however. After establishing TBAA's non-profit status, we must then look to whether it is "organized exclusively for religious, charitable or educational purposes." Bieker, supra, 169 N.J. at 175, 777 A.2d 37. When considering whether a sports organization, such as TBAA, is organized exclusively for educational purposes, we have granted "substantial latitude" in determining the appropriate avenues for achieving their objectives. Bloom v. Seton Hall Univ., 307 N.J.Super. 487, 491, 704 A.2d 1334 (App. Div.), certif. denied, 153 N.J. 405, 709 A.2d 798 (1998). The term "educational" is not limited to purely scholastic activities. Id. at 492, 704 A.2d 1334. "Education" has been broadly defined to include numerous activities, ... for example, "good sportsmanship, honesty, loyalty, courage and reverence ... through the teaching and supervision of baseball skills." Pomeroy v. Little League Baseball of Collingswood, 142 N.J.Super. 471, 474, 362 A.2d 39 (App. Div.1976). "[A] non-profit corporation may be organized for `exclusively educational purposes' even though it provides an educational experience which is `recreational' in nature." Morales v. N.J. Acad. of Aquatic Sciences, 302 N.J.Super. 50, 54, 694 A.2d 600 (App.Div.1997) (citing Pomeroy, supra, 142 N.J.Super. at 474, 362 A.2d 39). We are satisfied that TBAA's purpose of teaching and promoting good citizenship and sportsmanship and assembling teams and groups for participation in sports qualifies it as a non-profit organization within the scope of the charitable immunity statute.
Defendant contends that it was engaged in its stated goals at the time of plaintiff's alleged accident. Plaintiff argues, however, that the operation of concession stands at the tournament was not integral to TBAA's non-profit "works," and charitable immunity does not apply to injuries involving the concessionaires.
We have previously held "that N.J.S.A. 2A:53A-7 was not intended to immunize eleemosynary organizations from claims by fee-paying nonmembers arising from commercial activities geared to generate profit for the organization's charitable purposes." Kasten v. YMCA, 173 N.J.Super. 1, 7, 412 A.2d 1346 (App. Div.1980). Thus, a fee-paying non-member plaintiff injured at a ski area operated by the YMCA could pursue her tort claim against the YMCA. Ibid. Similarly, a non-congregation member attending a bingo game at a synagogue could pursue her claim for injuries incurred when a table at which she was sitting collapsed. Book v. Aguth Achim Anchai of Freehold, 101 N.J.Super. 559, 563-64, 245 A.2d 51 (App. Div.1968).
When a non-profit organization undertakes an activity ancillary to its stated charitable purpose, the related function is subject to charitable immunity if the ancillary function is integral to the charitable purpose. Bieker, supra, 169 N.J. at 178, 777 A.2d 37; Rupp v. Brookdale Baptist Church, 242 N.J.Super. 457, 459-61, 577 A.2d 188 (App.Div.1990) (holding that a church-run day camp that "integrate[d] biblical truth into the lives of children through formal and informal activities such as crafts and games" was subject to charitable immunity). Here, the concessions operated during the three-day soccer tournament were integral to TBAA's non-profit goals of education and promotion of sportsmanship in children. Whether TBAA operated *275 the concessions itself or allowed vendors to do so for a fee is of no consequence to TBAA's defense of charitable immunity. Lax v. Princeton University, 343 N.J.Super. 568, 571, 779 A.2d 449 (App.Div.2001) (holding that rental of the university's auditorium for concerts was integral to the university's educational purposes and, therefore, subject to charitable immunity). As an integral part of the tournament, the operation of the concessions falls within TBAA's charitable immunity.
Charitable immunity may not apply, however, if plaintiff was a contributor to the organization rather than a beneficiary by virtue of her volunteer activities at the tournament. Plaintiff maintains that she was not a beneficiary of TBAA because neither she nor her family were members of the association, and she was present as a volunteer, contributing her services, rather than receiving benefits from the organization. The fact that plaintiff and her family were not members of TBAA does not mean they did not benefit from TBAA's non-profit works. Hosting the tournament was consistent with TBAA's stated goals, and we have no difficulty concluding that a non-member can be a beneficiary of the non-profit works of an educational entity.
The case law addressing this issue distinguishes between persons benefiting from the charity and those contributing to it by virtue of their attendance or participation. The defense of charitable immunity is available in those cases where the injured party is a beneficiary of the defendant's charitable works, Ryan v. Holy Trinity, 175 N.J. 333, 354, 815 A.2d 419 (2003); Auerbach v. Jersey Wahoos Swim Club, 368 N.J.Super. 403, 415, 846 A.2d 646 (App.Div.2004); or accompanies a beneficiary to the event, Bieker, supra, 169 N.J. at 180, 777 A.2d 37. In cases where the plaintiff was a contributor to the charity or charitable event by his or her attendance or participation, the defense of charitable immunity is not available. See, e.g., DeVries v. Habitat for Humanity, 290 N.J.Super. 479, 485, 676 A.2d 152 (App. Div.1996) aff'd o.b. 147 N.J. 619, 689 A.2d 142 (1997); Book, supra, 101 N.J.Super. at 564, 245 A.2d 51.
Plaintiff's daughter and son were playing in the tournament and her husband was coaching their son's team. The children were, therefore, beneficiaries of the TBAA's stated purposes even though they were not members of the association. Plaintiff's husband, who was coaching, was obviously a volunteer. Plaintiff maintains that she was also a volunteer who was there to assist the teams with scheduling, marshalling supplies, and generally supporting the teams. From her deposition testimony, we are unable to determine whether she was a bona fide volunteer or whether she merely assisted the teams because she was present with her children. Therein lies the crux of the issue. If plaintiff attended the tournament principally as a bona fide volunteer with specific responsibilities, the defense of charitable immunity is not available to TBAA. If volunteering was ancillary to her attendance as a parent, she was principally a beneficiary and she is barred from pursuing her tort claim. In other words, a "but for" test must be applied: if plaintiff would not have attended the tournament but for her children's participation, she is a beneficiary. If, however, plaintiff can demonstrate that she was a bona fide volunteer with specific responsibilities which obliged her to attend, she is a contributor and may pursue her claim.
The distinction between a bona fide volunteer and a casual assistant arises from the charitable immunity statute which bars tort claims by "a beneficiary, to whatever *276 degree, of the works of such nonprofit corporation" but exempts from the immunity a person who is "unconcerned in and unrelated to and outside of the benefactions of such [non-profit organization]." N.J.S.A. 2A:53A-7. Thus, where an injured party is present at a charitable event principally as a bona fide volunteer, her attendance as a parent accompanying her children is ancillary to her voluntary status and she may pursue her tort claim against the non-profit organization.
Where there are no disputed material facts, the determination of charitable immunity is a question of law for the court to decide. Pelaez v. Rugby Laboratories, Inc., 264 N.J.Super. 450, 624 A.2d 1053 (Law Div.1993). Here, where there are disputed material facts, the issue must be presented to a jury. As with all affirmative defenses, defendant has the burden of presenting a prima facie case that plaintiff was a beneficiary of its non-profit works. Plaintiff then has the burden of going forward with evidence to rebut the beneficiary claim and demonstrate that she was a bona fide volunteer. The ultimate burden remains with defendant, however, to demonstrate the applicability of charitable immunity.
The public policy of the charitable immunity statute mandates that a plaintiff claiming volunteer status demonstrate a clear factual basis for the volunteer claim. "The doctrine of charitable immunity is rooted in English common law." Parker v. St. Stephen's Urban Dev., 243 N.J.Super. 317, 321, 579 A.2d 360 (App.Div.1990). The purpose of the doctrine is to avoid "diverting charitable trust funds to non-charitable purposes in order to live up to the reasonable expectations of the benefactor." Ibid. "[T]he essence of the public policy favoring charitable immunity is the preservation of private charitable contributions for their designated purposes." Id. at 326, 579 A.2d 360. The public policy would be virtually eviscerated if every parent attending a sports event hosted by a non-profit organization for the benefit of the children could claim volunteer status by virtue of tending to his or her children.
TBAA maintains that even if plaintiff was volunteering her services to the teams, she was engaged in typical spectator conduct at the time she was injured at the concession stand. In other words, defendant argues that since plaintiff was not engaged in the voluntary activities at the time she was injured, she is subject to charitable immunity. We do not agree.
We decline to base charitable immunity on a subjective standard. DeVries, supra, 290 N.J.Super. at 486, 676 A.2d 152. That is why we require plaintiff to establish that she falls within the DeVries volunteer category. If plaintiff attended the tournament as a bona fide volunteer, the fact that she was purchasing food at the time of the accident does not change her status.
The factual dispute as to whether plaintiff was a bona fide volunteer, precludes summary judgment. The trial court may not decide issues of fact, only whether such issues exist. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
Reversed and remanded.