**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2138-22

CASSANDRA GIGI SMITH,

     Plaintiff-Appellant,

v.

NEWARK COMMUNITY
HEALTH CENTERS, INC.,

     Defendant-Respondent.

_____

         Argued April 16, 2024 – Decided July 30, 2024

         Before Judges Rose, Smith and Perez Friscia.

         On appeal from the Superior Court of New Jersey, Law
         Division, Essex County, Docket No. L-0547-21.

         Margaret E. Quinlan argued the cause for appellant
         (Lowenthal & Abrams, PC, attorneys; Margaret E.
         Quinlan, on the brief).

         Samuel P. Reisen argued the cause for respondent (Law
         Offices of James H. Rohlfing, attorneys; Samuel P.
         Reisen, on the brief).

PER CURIAM

Plaintiff Cassandra Gigi Smith appeals from a February 9, 2023 Law Division order granting the summary judgment dismissal of her negligence claim against defendant Newark Community Health Centers, Inc. pursuant to the New Jersey Charitable Immunity Act (CIA), N.J.S.A. 2A:53A-7 to -11. Plaintiff asserted she was seriously injured on February 14, 2019, when she slipped and fell on a wet floor outside an examination room at defendant's East Orange facility after receiving an injectable medication paid by Medicare. Defendant raised several affirmative defenses, including immunity from suit pursuant to N.J.S.A. 2A:53A-7 (Section 7), based on its status as "a nonprofit corporation, society[,] or association organized exclusively for religious, charitable, educational[,] or hospital purposes."

On appeal, plaintiff maintains the CIA's immunity does not apply to her claim, asserting defendant neither was organized exclusively for educational purposes nor demonstrated it received sufficient funding to qualify for charitable immunity under Section 7. Contending defendant was organized for hospital purposes, plaintiff asserts defendant's immunity is circumscribed by the $250,000 cap on damages under N.J.S.A. 2A-53A-8 (Section 8). Finally, plaintiff argues the CIA's immunity does not apply to her claim because she was not a beneficiary of defendant's charitable activities at the time of the incident.

2

For the reasons that follow, we conclude Section 7 applies to plaintiff's claims and immunizes defendant from her suit. Accordingly, we conclude summary judgment was properly granted.

We review the trial court's grant of summary judgment de novo. Conforti v. County of Ocean, 255 N.J. 142, 162 (2023). Employing the same standard as the trial court, we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to the non-moving party, nonetheless entitle the movant to judgment as a matter of law. See Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c). We focus only on the motion record before the judge. See Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000).

We owe no deference to the trial court's legal analysis or interpretation of a statute. Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017). Accordingly, "a trial court's determination of the applicability of charitable immunity is reviewed de novo because an organization's right to immunity raises questions of law." Green v. Monmouth Univ., 237 N.J. 516, 529 (2019).

A-2138-22

I.

In his written decision accompanying the February 9, 2023 order, the motion judge set forth the governing sections of the CIA and summarized the policy underlying the CIA. Quoting our decision in Estate of Komninos v. Bancroft Neurohealth, Inc., 417 N.J. Super. 309, 319 (App. Div. 2010), the judge recognized the legislative intent behind the act "foster[s] the private provision of services that benefit the general welfare, thus relieving the government of the obligation to provide those services." Further, the CIA's "strong public policy . . . compels its liberal construction." Id. at 320; see also N.J.S.A. 2A:53A-10 (providing the CIA "shall be deemed to be remedial and shall be liberally construed").

The judge correctly stated the three-prong test to determine immunity under the CIA. Applying the language of Section 7, our Supreme Court reiterated in Green, "an entity qualifies for charitable immunity when it (1) was formed for nonprofit purposes; (2) is organized exclusively for religious, charitable[,] or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works." Id. at 530-31 (quoting Ryan v. Holy Trinity Evangelical Lutheran Church, 175 N.J. 333, 342 (2003)); see also N.J.S.A. 2A:53A-7(a).

A-2138-22

"Charitable immunity is an affirmative defense, as to which, like all affirmative defenses, defendants bear the burden of persuasion." Abdallah v. Occupational Ctr. of Hudson Cnty., Inc., 351 N.J. Super. 280, 288 (App. Div. 2002); see also F.K. v. Integrity House, Inc., 460 N.J. Super. 105, 116 (App. Div. 2019).

A.

The motion judge found defendant satisfied the three-prong test. Although the first prong was not in dispute, the judge found defendant was incorporated under New Jersey law as a nonprofit corporation. Plaintiff does not challenge this finding on appeal.

B.

Turning to the second prong, the judge initially found defendant's 1986 certificate of incorporation (COI) demonstrated the entity was formed "exclusively [for] charitable and educational purposes." As further support, the judge also cited the deposition testimony of defendant's Chief Operating Officer, Bridget Hogan. According to Hogan, as a federally qualified health center, defendant "deliver[ed] primary care to patients, regardless of their ability to pay." Further, defendant's "populations are insured, uninsured, underinsured" and services are performed regardless of the patient's ability to pay. Defendant utilized a sliding fee scale for uninsured patients. Regarding plaintiff's $281.16

5

fee for services performed on February 14, 2019, Hogan testified plaintiff "wasn't billed. The insurance company was billed." As the judge noted elsewhere in his opinion, it was undisputed that plaintiff's bill was paid by Medicare. Further, in her answers to defendant's statement of undisputed material facts supporting its summary judgment motion, plaintiff admitted "there was no co[-]pay."

Plaintiff challenges the judge's prong two determination, arguing defendant neither is a traditional educational institution, such as "schools of all sorts," nor provided "education" as defined in Pomeroy v. Little League Baseball, 142 N.J. Super. 471, 474 (App. Div. 1976), that is, "discipline of mind or character through study or instruction." As plaintiff correctly recognizes, in Pomeroy, we concluded Little League Baseball was organized exclusively for educational purposes where

> [t]he only proof presented on the summary judgment motion was that [the] defendant's exclusive purpose was the education of young people in the ideals of good sportsmanship, honesty, loyalty, courage and reverence, to the end that they may be stronger and happier, and that they may grow to be productive citizens. The fact that the objective was accomplished through the teaching and supervision of baseball skills d[id] not vitiate the purpose.
>
> [Ibid.]

6

We were persuaded the defendant in <u>Pomeroy</u> was indistinguishable from other organizations, including the Young Women's Christian Association and the Boy Scouts, which were found to have an educational purpose. <u>Ibid.</u>

However, plaintiff attempts to distinguish the "discipline of the mind or character" afforded by "athletic clubs, little league organizations, [and] boys and girls clubs" from defendant's "primary objective" in the present matter, deemed by plaintiff as "medical exams and treatment." Plaintiff's argument is misplaced.

As used in the CIA, "education" broadly defines instructional pursuits and is not limited to scholastic institutions. <u>See</u> <u>Estate of Komninos</u>, 417 N.J. Super. at 320. Indeed, citing our decision in <u>Pomeroy</u>, the Court in <u>Ryan</u> noted the phrase, "organized exclusively for educational purposes" has been broadly construed.175 N.J. at 347; <u>see also</u> <u>Roberts v. Timber Birch-Broadmoore Athletic Ass'n</u>, 371 N.J. Super. 189, 194 (App. Div. 2004) (recognizing the "[defendant]'s purpose of teaching and promoting good citizenship and sportsmanship and assembling teams and groups for participation in sports qualifie[d] it as a non[]profit organization within the scope of the charitable immunity statute"); <u>Auerbach v. Jersey Wahoos Swim Club</u>, 368 N.J. Super. 403, 413 (App. Div. 2004) (holding the defendant, a nonprofit corporation organized to train swimmers at various competitive levels, was organized

exclusively for educational purposes and entitled to invoke charitable immunity); Morales v. N.J. Acad. of Aquatic Sciens., 302 N.J. Super. 50, 54 (App. Div. 1997) (recognizing "a non[]profit corporation may be organized for 'exclusively educational purposes' even though it provides an educational experience which is 'recreational' in nature").

A nonprofit organization exclusively dedicated to religious or educational purposes is afforded "substantial latitude in determining the appropriate avenues for achieving [its] objectives." Bloom v. Seton Hall Univ., 307 N.J. Super. 487, 491 (App. Div. 1998). Thus, engaging in other activities or services will not necessarily "eviscerate[]" charitable status "as long as the services or activities further the charitable objectives the [entity] was organized to advance." Kuchera v. Jersey Shore Family Health Ctr., 221 N.J. 239, 252-53 (2015) (citing Bieker v. Cmty. House of Moorestown, 169 N.J. 167, 176 (2001)); see, e.g., Bloom, 307 N.J. Super. at 491-92 (concluding operation of an on-campus pub did not alter the fundamental educational nature of the college); Rupp v. Brookdale Baptist Church, 242 N.J. Super. 457, 465 (App. Div. 1990) (noting utilization of crafts and games to "foster sportsmanship, honesty and creativity" did not thwart religious day camp's educational purpose).

Although we agree with the motion judge's conclusion that defendant satisfied the second prong, further analysis is required. We must review the extent and nature of defendant's non-educational activities and distinguish whether they have supplanted or furthered the educational objectives of the organization.

Having conducted "a fact-sensitive" review of the record, Kuchera, 221 N.J. at 252, we are satisfied defendant provides more than "medical exams and treatment," and its health care services foster its educational objectives. According to its COI, defendant "[wa]s formed for scientific, educational, and charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code" and designed to: provide "health education services and services which promote optimal use of primary and supplemental health services including as necessary and appropriate services of bi-lingual outreach workers"; "serve as an active partner with the consumer, business labor, professional and political groups and leaders to identify, address and take action on the region's short and long term public health, environmental, and medical problems"; "advance the health status of the region's population through the provision of appropriate health and medical care, programs of education, and research activity"; "conduct and support research in the area of health services delivery

9

and health education"; "provide information on the availability and proper use of health services"; "conduct or support health care educational programs for health care providers, health care managers and [the] general public"; and "engage in or support scientific, clinical and health systems research and disseminate the results thereof."

The parties have not cited, nor has our research revealed, binding authority addressing a nonprofit medical center's non-educational activities. As stated in the COI, those activities include the provision of "comprehensive primary health services" and "supplemental health services." Much the same way the operation of an on-campus pub in Bloom, and the provision of crafts and games in Rupp did not eviscerate the educational nature of the defendants in those cases, we conclude the medical services rendered in this case did not thwart defendant's educational purpose. Rather, as evidenced by defendant's mission statement, its mission is consistent with that purpose:

> The mission of Newark Community Health Centers is to provide affordable, high quality, and accessible healthcare to the communities that we serve. As one of the largest providers of comprehensive primary care services for uninsured and medically underserved populations in one of the country's most populated areas, our primary goal is to eliminate health disparities and help people live stronger, healthier, and happier lives.

Because we conclude defendant was organized exclusively for educational purposes, as broadly construed by our jurisprudence, we need not conduct the source-of-funds assessment required when an entity is organized exclusively for charitable purposes. "Entities that can prove they are organized exclusively for educational or religious purposes automatically satisfy the second prong of the charitable immunity standard"; that is, "no further financial analysis is required." Ryan, 175 N.J. at 346; see also O'Connell v. State, 171 N.J. 484, 491 (2002).

## C.

As to the third prong, the motion judge correctly recognized the court must make successive inquiries: whether, at the time in question, defendant was promoting the objectives it was organized to advance; and whether plaintiff was a "direct recipient of those good works." Green, 237 N.J. at 531. On appeal, plaintiff only challenges the second inquiry. Contending she "did not need the charity," plaintiff asserts she "presumably pa[id] full price for [her treatment]" and, as such, "derived no benefit from . . . [d]efendant's non[]profit, charitable[] practice." We are unpersuaded.

A party is a beneficiary of good works when he or she receives, in some way, a benefit from the "charitable activities at the time of the accident." Hehre

v. DeMarco, 421 N.J. Super. 501, 508 (App. Div. 2011). Thus, immunity from liability does not extend to any person who is "unconcerned in and unrelated to and outside of the benefactions" of the charitable corporation. N.J.S.A. 2A:53A-7(a); see also Ryan, 175 N.J. at 353. However, a plaintiff's individual motivation is not relevant to whether he or she was a "direct recipient" of the charity. See Ryan, 175 N.J. at 350.

The second inquiry "is to be interpreted broadly, as evidenced by the use of the words 'to whatever degree' modifying the word 'beneficiary' in the statute." Id. at 353. That is, "[t]o be deemed a beneficiary, [the] plaintiff need not have personally received a benefit." Auerbach, 368 N.J. Super. at 414; see also Hehre, 421 N.J. Super. at 508. Thus, the third prong is satisfied where the plaintiff's "'presence was clearly incident to accomplishment' of [the] defendant's charitable purposes." Bieker, 169 N.J. at 180 (quoting Gray v. St. Cecilia's Sch., 217 N.J. Super. 492, 495 (App. Div. 1987)).

Here, plaintiff's presence at defendant's premises – to receive an injectable medication – was as a beneficiary of defendant's charitable works and in accordance with defendant's mission statement: "to provide affordable, high quality, and accessible healthcare to the communities" served by defendant. Although plaintiff was charged a fee for the service, as Hogan acknowledged at

12

deposition, Medicare paid less than the amount billed and plaintiff was not required to pay the difference. Nor was plaintiff charged a co-payment. We afford "substantial latitude" to the manner defendant advances its charitable objectives. Bloom, 307 N.J. Super. at 491. We conclude plaintiff's treatment fell within the scope of effectuating defendant's charitable purpose.

II.

Having concluded defendant is entitled to absolute immunity under Section 7, we need not address plaintiff's alternate argument under Section 8. We briefly do so for the sake of completeness.

Contending defendant was organized exclusively for hospital purposes, plaintiff argues "a cap on damages rather than full immunity is applicable" under Section 8, which provides, in pertinent part:

> Notwithstanding the provisions of [Section 7], any nonprofit corporation . . . organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation . . . to an amount not exceeding $250,000, together with interest and costs of suit, as the result of any one accident.

To support her argument, plaintiff cites our Supreme Court's decision in Kuchera. Similar to the present matter, in Kuchera, the "[p]laintiff slipped and fell on a wet spot on a floor in an outpatient health care facility," 221 N.J. at

241, and the facility "provides medical care for those 'who are uninsured, underinsured, without a primary care physician and/or who lack access to regular medical care,'" id. at 243. Unlike the present matter, however, the defendant facility was "owned and operated by a nonprofit hospital." Id. at 241.

We upheld the summary judgment dismissal of the plaintiff's complaint, "rejecting [her] argument that the health care entity that owned and operated the facility was 'organized exclusively for hospital purposes,' and, therefore, [wa]s entitled to the protections of [Section 8]." Id. at 241-42. Instead, we concluded "the parent-hospital's provision of charity care and medical education rendered the hospital a hybrid nonprofit institution organized exclusively for charitable and educational purposes," thereby affording the hospital absolute immunity under Section 7. Id. at 242.

The Court disagreed, stating: "Whether a nonprofit organization is entitled to charitable immunity or subject to the limitation on damages afforded to those institutions organized exclusively for hospital purposes turns on the purpose of the institution, not the use to which the facility is put on any given day." Ibid. Noting the outpatient health care facility was "an integral unit of the [hospital] system," id. at 254, the Court concluded our decision failed to

"account for the multi-function nature of the modern hospital and its role in the provision of health care in this society," id. at 255.

Simply stated, unlike the health care facility in <u>Kuchera</u>, defendant is neither owned nor operated by a nonprofit hospital. Rather, as stated above, defendant was organized exclusively for educational purposes. We therefore conclude defendant is not subject to the $250,000 limit set forth in Section 8.

To the extent not addressed, plaintiff's remaining contentions lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2138-22